[Crim. No. 1753. In Bank.—March 20, 1913.]

THE PEOPLE, Respondent, v. F. FREY, Appellant.

CRIMINAL LAW—DRAWING CHECK ON BANK WITHOUT FUNDS OR CREDIT TO MEET IT—WANT OF FUNDS OR CREDIT ESSENTIAL TO ESTABLISH CORPUS DELICTI—PROOF BY PROSECUTION—HEARSAY.—Under section 476a of the Penal Code—providing that "every person who, willfully, with intent to defraud, makes or draws, or utters, or delivers to another person any check or draft on a bank, banker or depositary for the payment of money, knowing at the time of such making, drawing, uttering or delivery, that he has not sufficient funds in or credit with such bank, banker or depositary to meet such check or draft in full upon its presentation, is punishable by imprisonment in the state prison. . . . The word 'credit' as used herein shall be construed to be an arrangement or understanding with the bank or depositary for the payment of such check or draft,"—the want of funds in or credit with the bank upon which the draft or check is drawn constitutes one of the essential elements of the crime which must be proven by the prosecution to establish the *corpus delicti*, and which cannot be shown by hearsay testimony.

ID.—CONVICTION—CONFESSION—PROOF OF CORPUS DELICTI.—A conviction cannot be had upon the extrajudicial confession of the defendant, unless corroborated by proof *aliunde* of the *corpus delicti*.

ID.—INSUFFICIENT PROOF OF CORPUS DELICTI—HEARSAY EVIDENCE OF DISHONOR OF CHECK.—In a prosecution for such offense, proof that the check in question, which was drawn on a bank in another state,

had been deposited by the payee in a bank in this state for collection and had been forwarded by its banking correspondent, in the manner customary with bankers and in the usual course of business, to the drawee, and had been returned to the sender, with the words "no account" written across its face, and that it was customary, whenever a check was presented to a bank, and the drawer had no funds there to meet it, for an officer of the bank to write on the check the words "no funds" or "no account," and then return it to the sender, is insufficient to establish the *corpus delicti*, in the absence of testimony on the part of any one connected with the drawee that the words "no account" on the face of the check were written by any person connected with the drawee, or by any one who knew or could know the facts.

ID.—DEFENDANT NOT REQUIRED TO PROVE EXISTENCE OF FUNDS OR CREDIT.—Such a prosecution does not come within the rule that negative allegations regarding matters peculiarly within the knowledge of the defendant need not be proven. It cannot be said of a drawer of a check that he has such peculiar knowledge of the state of his bank account or credit that mere allegations of their non-existence places upon him the burden of proving them.

ID.—EVIDENCE OF CONFESSION WITHOUT PROOF OF CORPUS DELICTI.— The admission of evidence of the confession of the defendant, upon such insufficient proof of the *corpus delicti*, was reversible error.

ID.—INSTRUCTIONS—FAILURE TO DEFINE TERM "CORPUS DELICTI."—In such prosecution, an instruction to the jury, requested by the defendant, as follows: "Before you can find the defendant guilty, you must be satisfied that the *corpus delicti* has been proven. This term means exactly what it says. It involves the element of crime. It is not sufficient that it is shown that the defendant drew a check or draft upon a bank, banker or depositary where he had no funds or credit, in order to establish the *corpus delicti*. This would simply establish the *corpus*, and proof thereof joined with a confession by the defendant of his guilt, would not be sufficient to convict," was properly refused, because it was erroneous and calculated to mislead the jury, and because it failed to give any definition of the term *corpus delicti*.

ID.—INSTRUCTION REQUESTED BY DEFENDANT — FACTS ESTABLISHING PRIMA FACIE CASE OF GUILT.—Another instruction requested by the defendant, the first part of which was of similar import, and which concluded as follows: "and in this case, if the only evidence before you shows that the defendant drew a check or draft upon a bank in which he had no deposit or credit, and that he knew this to be true at the time of drawing the check or draft, then you must find the defendant not guilty," was properly refused. The proof outlined would have amounted to the establishment of a *prima facie* case against the defendant.

ID.—FAILURE TO INSTRUCT WITH REFERENCE TO CONFESSION AND NECESSITY OF PROOF ALIUNDE OF CORPUS DELICTI.—Under such evidence, the court should have charged the jury as to the true rule with reference to the admission of confessions and the necessity for independent 'proof of the *corpus delicti*, and its failure to do so was error.

ID.—HEARSAY EVIDENCE—STATEMENTS IN LETTER TO SENDER OF CHECK. A letter, purporting to have been sent from the place where the drawee of such check had its place of business, to the sender of the check, was inadmissible as hearsay to prove the fact that another specified bank had succeeded to the corporate rights and business of the drawee of the check.

ID.—CONSTITUTIONAL LAW—CONSTRUCTION OF SECTION 4½ OF ARTICLE VI.—Section 4½ of article VI of the constitution, cannot be construed so as to sustain a conviction of a criminal offense, where there was no proof made of one of the essential elements of such offense.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order refusing a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

True Van Sickle, T. J. Weldon, and W. D. L. Held, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

MELVIN, J.—This case was reheard, on motion, after decision by the district court of appeal, principally because the opinion of that court contained certain inconsistent statements. In fairness to Mr. Justice Hart, the author of said opinion, we wish to state the reason for the presence of the conflicting expressions. At first he concluded that the *corpus delicti* had been sufficiently proven, but that the cause should be reversed on account of the court's failure to instruct upon that subject, in connection with defendant's confession. An opinion embodying these views was prepared, but upon further study the learned author became convinced that there had been no sufficient proof of the *corpus delicti* independently of the confession. His written opinion was accordingly modified, but by inadvertence some of the language of the original draft, applicable only to the theory upon which it

had been prepared, was copied into the final opinion and went to print without correction, during a brief absence of Mr. Justice Hart from Sacramento.

The appeal is from the judgment of conviction and from an order denying defendant's motion for a new trial. The defendant was convicted of the offense defined by section 476a of the Penal Code. The information charged in substance that defendant, with intent to defraud one Frank Sandelin, did unlawfully, feloniously, fraudulently, and knowingly draw and deliver to Sandelin a certain check and draft for the payment of money upon a certain banking corporation the Douglas County Bank of Gardnerville, Nevada, and that defendant had not at the time sufficient funds in or credit with said bank to meet said check in full or at all on its presentation. The section upon which this prosecution is based is as follows:

"Every person who, willfully, with intent to defraud, makes or draws, or utters, or delivers to another person any check or draft on a bank, banker or depositary for the payment of money, knowing at the time of such making, drawing, uttering or delivery, that he has not sufficient funds in or credit with such bank, banker or depositary to meet such check or draft in full upon its presentation, is punishable by imprisonment in the state prison for not less than one year nor more than fourteen years. The word 'credit' as used herein shall be construed to be an arrangement or understanding with the bank or depositary for the payment of such check or draft.''

It will be seen that want of funds in or credit with the bank upon which the draft or check is drawn constitutes one of the essential elements of the crime denounced by this statute. Appellant contends that there was no proof of the *corpus delicti* made independently of the defendant's confession, and we are convinced that the point is well taken. The detective who arrested Frey testified that while in custody the latter admitted that he had no funds in or credit with the bank mentioned in the information. The independent proof of the dishonor of the check was that it had been deposited by the payee in a bank at Ukiah for collection; that it was then sent by that bank to the First National Bank of San Francisco; that it was by the last mentioned bank

forwarded to the bank at Gardnerville, and that it was returned to the First National Bank of San Francisco with the words "No account" written across its face. By the testimony of bankers it was shown that the check had been handled in the customary manner and in the usual course of business. They also testified that whenever a check is presented and the drawer has no funds in the bank to meet it, it is customary for an officer of the bank to write on the said check the words "No funds" or "No account," and then return it to the sender. There was no testimony on the part of any one connected with the bank that the words "no account" on the face of the check were written by any person connected with the banking corporation in Nevada, or by any one who knew or could know the facts. The learned attorney-general insists that such proof as was here adduced is sufficient establishment of the *corpus delicti,* and that unless this court so declares, it will be impossible to convict any one of the crime defined by section 476a of the Penal Code. We are fully mindful of the importance of the argument *ab inconvenienti,* but since the legislature has seen fit to make proof of a negative proposition,—namely, the nonexistence of funds or credit, an essential element of a crime, we cannot see our way to a conclusion authorizing hearsay evidence to establish that constituent part of the offense. If practical difficulties are involved, that is a matter for legislative adjustment. "The rule is well established that a conviction cannot be had upon the extrajudicial confession of the defendant, unless corroborated by proof *aliunde* of the *corpus delicti.*" (*People* v. *Jones,* 123 Cal. 68, [55 Pac. 698].) We are aware of the fact that many cases properly hold very slight proof of the *corpus delicti* to be sufficient basis for the admission of a defendant's confession, but we know of none which sustains proof of the *corpus delicti* upon purely hearsay testimony. *People* v. *Spencer,* 16 Cal. App. 759, [117 Pac. 1039], is cited with apparent confidence by the attorney-general, but that was a case in which the appellant contended that his want of credit with the bank was not sufficiently shown. The court held that such a fact might be proved by circumstantial as well as by direct evidence, saying: "But here the testimony showed that the defendant represented that he had on deposit in the Seattle Bank $20,000; that within a few days he

expected $75,000 more; yet when his draft was presented for payment a few days later he had on deposit approximately only $200. These facts, together with the circumstance that the check was dishonored, were quite sufficient to warrant the jury in drawing the inference that the defendant did not have sufficient credit with the bank to meet the draft; and consequently justified the court in admitting proof of the extrajudicial statements of the defendant without further evidence to establish the *corpus delicti.* The authorities support this view." In that case there was no question that the lack of funds on deposit to defendant's credit was shown by competent evidence. The chief clerk of the Seattle bank testified upon that subject.

Nor does this case come within the rule that negative allegations regarding matters peculiarly within the knowledge of the defendant need not be proven. That is a special rule applicable to such prosecutions as those for practicing some profession or following some calling without the license provided therefor by law. (*People* v. *Boo Doo Hong,* 122 Cal. 607, [55 Pac. 402]; *People* v. *Fortch,* 13 Cal. App. 775, [110 Pac. 823].) It cannot be said of a person that he has such peculiar knowledge of the state of his bank account or credit that mere allegations of their nonexistence places upon him the burden of proving them. If that were true, it would only be necessary in a case like this to prove the drawing of the check, the refusal of the depositary to cash it, and then unless the defendant could prove that he had cash or credit with such depositary, his fraudulent intent would be inevitably inferred. If the argument of inconvenience is to be indulged, it seems to us it may be more logically applied to exempt a defendant charged with this offense from the purview of the rule in license cases and the like, than to justify the prosecution in sustaining proof of the *corpus delicti* by hearsay. The ruling of the court in permitting proof of the confession before proper proof of the *corpus delicti* was error for which a reversal must be ordered.

Appellant complains of the court's refusal to give two instructions upon the subject of the admission of the confession. One of these was in part as follows:

"I charge you, gentlemen of the jury, that before you can find the defendant guilty, you must be satisfied that the

*corpus delicti* has been proven. This term means exactly what it says. It involves the element of crime. It is not sufficient that it is shown that the defendant drew a check or draft upon a bank, banker, or depositary where he had no funds or credit, in order to establish the *corpus delicti*. This would simply establish the *corpus*, and proof thereof joined with a confession by the defendant of his guilt, would not be sufficient to convict.'' The proposed instruction was erroneous and calculated to mislead the jury, and was therefore properly refused by the court. From the lawyer's standpoint the language employed is subject to just criticism because of the ruthless dissection of the term "*corpus delicti*." It is true that there is some excuse for this error to be found in a decision of this court, because in *People* v. *Simonsen,* 107 Cal. 347, [40 Pac. 440], the following language is used: ''The term '*corpus delicti*' means exactly what it says. It involves the element of crime. Upon a charge of homicide, producing the dead body does not establish the *corpus delicti*. It would simply establish the *corpus;* and proof of the dead body alone, joined with a confession by the defendant of his guilt, would not be sufficient to convict. For there must be some evidence tending to show the commission of a homicide, before a defendant's confession would be admissible for any purpose.'' Whatever may be said of the reasoning contained in the above quotation, we cannot approve its Latin. Doubtless the learned author had in mind the two elements of the *corpus delicti* which are recognized by all of the authorities, 1. the facts forming its basis, and 2. the criminal agency causing them to exist. But to separate the two words of the term itself was ruthlessly to put asunder that which the usage of ages has kept in firmest wedlock. But the principal trouble with the instruction was that it did not contain any definition of the legal term used. The giving of it without such definition would have been about as sensible as it would have been to tell the jurors that the defendant was accused of a violation of section 476a of the Penal Code without reading that statute to them or substantially stating its contents. The latter part of the proposed instruction contained a correct statement of the law. By it the jurors were told, in effect, that unless there was some evidence tending to show the commission of a crime, the confession of the defendant

was not admissible for any purpose.   The first part of another proposed instruction which the court refused to give was of a similar purport, but the latter part was as follows: ''and in this case, if the only evidence before you shows that the defendant drew a check or draft upon a bank in which he had no deposit or credit and that he knew this to be true at the time of drawing the check or draft, then you must find the defendant not guilty.'' This was properly refused.   The proof outlined would have amounted to the establishment of a *prima facie* case against the defendant.   But while these instructions as proposed were improper, the court should have told the jury the true rule with reference to the admission of confessions and the necessity for independent proof of the *corpus delicti.*   In such a case as this the defendant was entitled to the benefit of such a charge.   The court utterly failed to instruct upon this matter and thereby committed error.

No other alleged errors require comment except that relating to the attempted proof by a letter, said to have been sent from Gardnerville to the First National Bank of San Francisco, that the Douglas County Farmers' Bank had succeeded to the corporate rights and business of the Douglas County Bank.   This was of course hearsay testimony and its admission was improper.

The attorney-general invokes the aid of section 4½ of article VI of the constitution, but that section can have no application here.   Whatever may have been the purpose of that constitutional provision, it could not excuse failure to prove by competent evidence one of the essential elements of a crime, or, as Mr. Justice Hart phrased it, that section ''will never be so construed as that it may be made to apply to and rescue from reversal any criminal case in which, as here, there is no proof of one of the essential elements of an offense with which the accused may be charged, or, in other words, that it will not stand as a shield against reversal if, as here, there is absolutely no proof of a crime having been committed at all.''

The judgment and order are reversed.

Henshaw, J., Lorigan, J., and Beatty, C. J., concurred.