[Crim. No. 3601. In Bank.—June 1, 1933.]

THE PEOPLE, Respondent, v. GEORGE MORRISON et al., Appellants.

J. Marion Wright for Appellants.

U. S. Webb, Attorney-General and Frank English, J. Charles Jones and James S. Howie, Deputies Attorney-General for Respondent.

SEAWELL, J.—This cause was transferred to this court after decision by the District Court of Appeal, Fourth District, Barnard, P. J., writing the opinion affirming the judgment.

The defendants were jointly accused by indictment of the crime of conspiring to violate the Alien Land Act of this state. (Stats. 1921, p. lxxxiii; Stats. 1923, p. 1020; Stats. 1927, p. 880.) Section 13 of said initiative measure provides that the legislature may amend said measure in furtherance of its purpose. ■■■ Section 9a, which appellants claim violates the due process clause of the federal Constitution and denies to them equal protection of the law, was adopted as an amendment of said initiative measure by the legislature of 1927. (Stats. 1927, p. 880.) It provides as follows:

"In any action or proceeding, civil or criminal, by the state of California, or the people thereof, under any of the provisions of this act, when the proof introduced by the state, or the people thereof, establishes the acquisition, possession, enjoyment, use, cultivation, occupation, or transferring of real property or any interest therein, or the having in whole or in part the beneficial use thereof by any defendant, or any of such fact, and the complaint, indictment or information alleges the alienage and ineligibility to United States citizenship of such defendant, the burden of proving citizenship or eligibility to citizenship shall thereupon devolve upon such defendant."

Section 1983 of the Code of Civil Procedure, which was passed by the same legislature that amended the Alien Land Act in the respect above set forth, prescribes as a rule of evidence that whenever ineligibility to citizenship is alleged in a civil or criminal proceeding brought to enforce any law which denies any right, privilege or license to any person not a citizen or not eligible to become a citizen of the United States, the burden rests upon the state or people to establish that such right, privilege or license was exercised by the person so alleged to have exercised the same, and upon such facts being so established the burden shall be upon the person claiming the right to exercise such right, privilege or license to show that at the time he exercised said right he was a citizen of the United States or eligible to

become such citizen. That section contains nothing of substance so far as the question is here involved that is not found in the amendment of the Alien Land Act of 1927. The only purpose it can serve is to make more emphatic the intention of the legislature to establish a rule of evidence which shall be applied in the class of cases of which the instant case is unquestionably one.

The indictment under which appellants were convicted alleged that they wilfully, unlawfully and feloniously combined and conspired by unlawful means and devices to bring about and accomplish the possession, enjoyment, use, cultivation and occupancy for agricultural purposes, by the defendant Doi and for his use and benefit, of certain described real property situate in the county of San Diego, which real property is alleged to be agricultural in character. It is alleged that the defendant Doi was and is an alien ineligible to citizenship under the laws of the United States, and that he is a citizen and subject of the empire of Japan and not authorized by law or treaty to acquire, enjoy, occupy or to have any beneficial interest in any real property in this state for agricultural purposes. It is also alleged that in furtherance of said conspiracy, and for the purpose of accomplishing and effecting the purposes and objects thereof, the defendant Morrison put the defendant Doi into possession of the agricultural land described, and permitted, aided and encouraged him to take possession thereof and to use, enjoy, cultivate and occupy the same, and that the defendant Doi took possession of said land, used, enjoyed, cultivated and occupied the same and raised and harvested crops thereon for his own use and benefit.

Trial by jury was waived and the action was tried before the court. The only evidence introduced consisted of the following stipulation: "It is stipulated that the defendant George Morrison is, and was at all times mentioned in the indictment, a native-born citizen of the United States of America, and lessee of the land described in the said amended indictment; that said land is agricultural land, and at all times mentioned in said amended indictment has been used exclusively for agricultural purposes; that on or about the 27th day of August, 1931, the said George Morrison did knowingly and wilfully combine, confederate and agree with one H. Doi to bring about and accomplish the possession,

enjoyment, use, cultivation and occupancy for agricultural purposes by said H. Doi, and thereafter to continuously keep and maintain the said H. Doi in such possession, enjoyment, use, cultivation and occupancy, for agricultural purposes, and to the use and beneficial interest of the said H. Doi, of all of the said land, and thereafter, and pursuant to said confederation, combination and agreement, and as a result thereof, and in furtherance of, and to accomplish and effect the purposes and objects thereof, the said George Morrison did put the said H. Doi into possession of, and did permit, aid and encourage the said H. Doi to go into possession of, and to use, enjoy, cultivate and occupy the said land, and said H. Doi did go into possession of said land, and did use, enjoy, cultivate and occupy the same, and did raise and harvest crops thereon, for the use and benefit of said defendants and each of them.''

By the above stipulation it will be seen that the agricultural character of the lands and the execution of the lease and the entry into the possession thereof by defendant H. Doi (alleged to be a citizen and subject of the empire of Japan) and all facts necessary under the Alien Land Act to sustain a conviction except ineligibility are admitted. The defendants having failed to offer any evidence touching the qualification of Doi to exercise the rights of citizenship, or to meet the burden cast upon him, were adjudged guilty as charged, and released on probation. This appeal is from the judgment of conviction and order denying a new trial.

Appellants' sole attack is made upon that portion of the decision in the case of *People* v. *Osaki*, 209 Cal. 169 [286 Pac. 1025, 1036], which sustains the power of the legislature to cast the burden upon aliens charged in the manner provided by the acts in question to prove their eligibility to own, possess or occupy agricultural land. While it was pointed out in that case that the evidence produced by the prosecution was sufficient of itself to show that the accused was an ineligible alien without the necessity of invoking the aid of the burden of proof provisions of said amendment to the Alien Land Act and said statutes, the validity of said burden of proof provisions was nevertheless brought into question and considered by us at great length. In fact, by far the greater portion of the decision was given to a consideration of the validity of said sections which cast the

burden of proof upon the accused. In our discussion of the question here pressed by appellants we said:

"We are of the view that the better reason supports the conclusion that the burden in cases involving questions of naturalization and alienage has always been upon the defendant, who has intimate and peculiar knowledge of the fact."

Again we said:

"It is not intended by what we have said to extend the rule of convenience or burden of proof to common-law crimes generally designated as *malum in se* nor to all crimes *malum prohibitum*. We go no further than to apply the rule to the particular situation in accordance with the express mandate of said amendments."

Counsel for appellants recognize the relevancy and application of the authorities cited in the Osaki case to the instant case, and ask that we disapprove of the rule therein adopted and apply the doctrine announced in *People* v. *Quarez*, 196 Cal. 404 [238 Pac. 363]. That case leans heavily upon *People* v. *Frey*, 165 Cal. 140 [131 Pac. 127], which, as pointed out in the Osaki case, was adopted by a bare majority of the court. *People* v. *Quarez* and *People* v. *Frey* and many other cases of our own and other jurisdictions were exhaustively considered in the Osaki case, and counsel in the instant case has presented no important authorities or additional arguments which were not drawn to our attention in the Osaki case. Both the Quarez and Frey cases recognize the rule *ab inconvenienti*, commonly known as the rule of necessity or convenience, but seek to limit its application to the prosecution of persons charged with the violation of statutes regulating the practice of medicine and other professions and certain callings which provide that a license shall first be obtained before any person may engage in the practice of said professions or callings. The rule of convenience or necessity is of common-law origin and was a rule of evidence as early as 1816, a period long prior to the adoption of modern system requiring persons to obtain a license before they may engage in particular callings, which system has become quite universal as conducive to public health and safety during the present and latter part of the past century.

Chief Justice Ellenborough recognized the rule more than a century ago in the case of *King* v. *Turner,* 5 Maule & S. 206. This early case did not involve the question of licensing a calling, but was bottomed on the want of qualification on the part of the accused for having game in his possession. The identical principle is presented in the instant case, to wit, a want of qualification to enjoy an exclusive privilege of citizenship. Lord Ellenborough states the question as being one upon whom the *onus probandi* lies; whether it lies upon the person who affirms a *qualification* to prove the affirmative, or upon the prosecutor who denies any qualification to prove the negative. He observes that there were about ten different heads of qualification enumerated in the statute to which the proof might be applied, and, according to the argument made, every person who laid an information as to qualification of the accused would be bound to give satisfactory evidence before the magistrates to negative the defendant's qualification upon each of those several heads. "The argument," the eminent jurist remarks, "really comes to this, that there would be a moral impossibility of ever convicting upon such an information. If the informer should establish the negative of any part of these different qualifications, that would be insufficient, because it would be said, *non liquet,* but that the defendant may be qualified under the other. And does not, then, common sense show that the burden of proof ought to be cast on the person who, by establishing any one of the qualifications, will be well defended? Is not the statute of Anne in effect a prohibition on every person to kill game, unless he brings himself within some one of the qualifications allowed by law, the proof of which is easy on the one side, but impossible on the other?"

The great jurist makes reference to Lord Mansfield in *Spiers* v. *Parker,* and states that he finds him laying down the rule that in actions upon the game laws, and he saw no good reason why the rule should not be applied to informations as well as actions, the plaintiff must negative the exceptions in the enacting clause, though he throw the burden of proof on the other side. Continuing he said: "The same was said by Heath, J., in *Jelfs* v. *Ballard;* and such I believe has been the prevailing opinion of the profession, and the practice. I am, therefore, of the opinion that this conviction, which specifies negatively in the information the several

qualifications mentioned in the statute is sufficient, without going on to negative, by the evidence, those qualifications."

Bayley, J., in a concurring opinion, said that no hardship was cast upon the defendant by the above rule because the defendant must be presumed to know his own qualification and to be able to prove it.

Holrod, J., concurring, said that it was a general rule that the affirmative is to be proved, and not the negative, of any fact which is stated, unless under peculiar circumstances, where the general rule does not apply. He holds that where it is shown that qualification to exercise a right or privilege is peculiarly within the knowledge of the person assuming to exercise the same, the burden is on such person to prove it.

It will be observed that the rule thus early recognized was not confined to medical cases, but to all of that class of cases in which the *qualification* of the person to exercise a privilege was the issue. The question before us is one in which qualification is the crux of the proposition. The books are replete with decisions which follow the rule early announced by Chief Justice Ellenborough and concurred in by his associates. Justice Story, in *United States* v. *Hayward*, 26 Fed. Cas. 240 (No. 15,336), recognized the rule at length in a case wherein the question arose as to the necessity of negativing the neutrality of a vessel in which goods were brought into this country. In his consideration of negative allegations he holds the reasonable rule is that the burden of proof shall rest upon the party who holds the affirmative; and especially where the facts are peculiarly within his privity and cognizance. In *Casey* v. *United States*, 276 U. S. 413 [48 Sup. Ct. 373, 72 L. Ed. 632], involving the illegal possession of morphine, Mr. Justice Holmes said: "It is consistent with all the constitutional protections of accused men to throw on them the burden of proving facts peculiarly within their knowledge and hidden from discovery by the government." (1 Greenleaf on Evidence, sec. 79; 4 Wigmore on Evidence, sec. 2486; *Yee Hem* v. *United States*, 268 U. S. 178 [45 Sup. Ct. 470, 69 L. Ed. 904]; *Mobile etc. R. R.* v. *Turnipseed*, 219 U. S. 35 [31 Sup. Ct. 136, 55 L. Ed. 78, Ann. Cas. 1912A, 463, 32 L. R. A. (N. S.) 226]; *State* v. *Miller*, 182 Mo. 370 [81 S. W. 867]; *State* v. *Abbey*,

29 Vt. 60 [67 Am. Dec. 754]; *People* v. *Boo Doo Hong*, 122 Cal. 606 [55 Pac. 402]; *People* v. *Goscinsky*, 52 Cal. App. 62 [198 Pac. 40]; *People* v. *T. Wah Hing*, 47 Cal. App. 327 [190 Pac. 662].) The questions of *corpus delicti* and compelling the accused to be a witness against himself are fully discussed in a number of the case cited in *People* v. *Osaki, supra,* and it is held that no right of the accused is denied or abridged by the application of the rule of convenience in cases where qualification is made the test of the right to enjoy a certain privilege, and the qualification upon which he asserts his right is peculiarly within the knowledge of the person exercising such privilege.

*People* v. *Velasquez,* 70 Cal. App. 362 [233 Pac. 359], Curtis, J., writing the opinion, held contrary to *People* v. *Quarez, supra,* and we are of the view that the treatment of and the application of the rule of convenience made by the District Court of Appeal is sound in reason and is sustained by the greater weight of authority. It held that the accused had absolute knowledge as to whether he was a naturalized citizen, and the burden was on him to offer his proof. If the People in this case should be required to prove the negative the enforcement of the law would be defeated by imposing upon the People the impossible task of making a thorough and painstaking search of the entire United States and its dependencies in probably a vain effort to establish the nonexistence of a naturalization record. This case was published about the time that the Quarez decision was rendered. The first legislature that convened after the Quarez decision became the law, in an effort to supply the ground upon which a contrary decision might rest, adopted the amendment and statutes now before us, casting the burden of proof upon persons whose right to exercise certain privileges granted only to citizens may be challenged upon the grounds of alienage, as in said statutes provided.

That it is competent for the state in the exercise of its sovereign power to reserve the ownership, occupancy and control of its agricultural lands for the benefit of its citizens or those eligible to become such, and that it may as a means of determining such eligibility when it is drawn into question by an appropriate proceeding cast upon the person claiming or assuming the right to own, occupy or control said land, the burden of proving his eligibility, are propo-

sitions that are entrenched in reason and supported by the great weight of eminent authority, and cannot be seriously questioned.

Medical ·license cases and liquor cases furnish a fertile field for the application of the rule of convenience or necessity. But it will be found upon an examination of the cases that the rule has been applied to cases of bigamy, relationships, the right to take game, possession of opium, questions of neutrality, and in fact generally to all cases of qualification where the right to enjoy a privilege is peculiarly within the knowledge of the person exercising such privilege, and not within the knowledge of the state which challenges the right by negative allegations. No case can easily be imagined which so aptly justifies the application of the rule of necessity and convenience as do the facts and circumstances which constitute the basis of the instant case. It would be beyond reason to require the state to search the records of every city, parish and county of the nation in proof of a negative when the question of qualification is peculiarly within the knowledge of the person who asserts the right to enjoy a privilege which attaches to citizenship alone.

We have given no special consideration to section 9b of said amendment to the Alien Land Act, for the dual reason that it is not material to the issue involved in the instant case, and its effect was fully considered in the Osaki case. That section provides that when the proof shows the defendant to be a member of a race ineligible to citizenship under the naturalization laws of the United States, the burden of proving citizenship or eligibility as a defense shall thereupon devolve upon such defendant. It is specially provided by said section that it shall not modify, limit or affect in any manner the provisions of said section 9a. Said section 9b was doubtless adopted as a measure offering some assistance in the way of making the act effective if section 9a should for any reason fail.

In the prosecution of cases of this class the burden of proof is upon the prosecution to affirmatively establish every element constituting the offense save the want of eligibility on the part of the accused. There is nothing unreasonable or unjust in the rule which requires the accused to prove his eligibility. The legislature has determined that the

safety and welfare of the state depend largely upon the ownership of its agricultural land remaining in the hands of its citizens, or those eligible to become such. The United States Supreme Court in a number of decisions has approved this policy. The legislature by statutory enactment has cast the burden upon those whose eligibility is challenged in the name of state of proving such eligibility. It is entirely competent for it to do so.

The judgment is affirmed.

Tyler, J., *pro tem.*, Langdon, J., and Waste, C. J., concurred.

CURTIS, J., Dissenting.—I dissent. The crime charged against the defendants consists of two elements, (1) the alienage and ineligibility to citizenship of H. Doi, and (2) the possession of agricultural lands by said defendant. The second of these two elements was proven, but there was no evidence whatever in support of the first element—alienage and ineligibility to citizenship of H. Doi. Under section 9a of the Alien Land Act as the alienage and ineligibility to citizenship was alleged in the indictment the burden of proving citizenship or eligibility to citizenship was cast upon the defendants. The conviction of the defendants must stand, therefore, if this section of the Alien Land Act is a valid exercise of legislative power. The majority opinion sustains the validity of the law in question. In the first place it is apparent that there is a marked distinction between the instant case and the case of *People* v. *Osaki*, 209 Cal. 169 [286 Pac. 1025]. In that case there was direct proof, and this fact was emphasized throughout the opinion, not only that the defendant Osaki was in the possession of agricultural lands, but also that he was a member of the Japanese race. Under section 9b of the Alien Land Act proof of these facts creates "a *prima facie* presumption of ineligibility to citizenship". The constitutionality of section 9b of said act is not questioned. Under that section it is necessary to prove two facts: First, that the defendant is in possession of agricultural lands of this state, and second, that he is a member of a race ineligible to citizenship. Under section 9a, however, only one of these facts is required to be proven, and that is that the defendant is in possession of agricul-

tural lands of this state. From this one fact under said section the presumption may be drawn that the defendant is a member of a race ineligible to citizenship and that he is also ineligible to citizenship. Referring back to section 9b of the act and the legislative presumption therein created, we find that upon proof that the defendant is a *member* of a *race* ineligible to citizenship, the presumption arises that he is ineligible to citizenship. It is clear that there is a reasonable and rational connection between the fact thus proven and the fact presumed. It is reasonably probable that a member of the Japanese race, for instance, was born in Japan and is, therefore, ineligible to citizenship under the laws of this country. But under section 9a of the act, the only fact necessary to prove is that the defendant is in possession of agricultural lands and the burden of proving that he is ineligible to citizenship is then cast upon the defendant, or which amounts to the same thing, the defendant is then presumed to be ineligible to citizenship. From the foregoing statement, I think it clearly appears that there is no rational or reasonable connection or relation between the fact proven and the fact presumed. The fact that a person is in possession of agricultural lands of the state does not in the least tend to prove that he is a member of any particular race, much less of a race, the members of which are denied citizenship under our laws. The validity of legislation creating presumptions similar to that provided for by section 9a of said act has frequently been before the courts of this and other jurisdictions with the result that it has uniformly been declared invalid. One of the leading cases upon this subject is that of *McFarland* v. *American Sugar Refining Co.*, 241 U. S. 79 [36 Sup. Ct. 498, 499, 60 L. Ed. 899]. In that case the legislature of Louisiana had enacted a statute which purported to impose penalties for monopolies and conspiracy in relation to trade. By this statute it was provided that: "Any person engaged in the business of refining sugar within this state who shall systematically pay in Louisiana a less price for sugar than he pays in any other state, shall be *prima facie* presumed to be a party to a monopoly or combination or conspiracy in restraint of trade and commerce, and upon conviction thereof shall be subject to a fine. . . . " The Supreme Court of the United States held that this presumption was invalid as being in violation

of the fourteenth amendment of the Constitution, and speaking through Mr. Justice Holmes said: "As to the presumptions, of course the legislature may go a good way in raising one or in changing the burden of proof, but there are limits. It is 'essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate'. (*Mobile, J. & K. C. R. Co.* v. *Turnipseed*, 219 U. S. 35, 43 [55 L. Ed. 78, 80, 32 L. R. A. (N. S.) 226, 31 Sup. Ct. 136, Ann. Cas. 1912A, 463, 2 N. C. C. A. 243].) The presumption created here has no relation in experience to general facts."

In *O'Neill* v. *United States,* 19 Fed. (2d) 322, the defendant was accused with the violation of the Harrison Anti-Narcotic Act. In that case the defendant was convicted of the offense of selling drugs without paying the special tax provided by the statute. The prosecution relied upon the *prima facie* presumption which was claimed to arise under the statute from the possession of unstamped drugs. In discussing this presumption, the court said: "The general principle is well recognized that even in criminal prosecutions, congress or a state legislature may with certain limitations enact that when certain facts have been proved they shall be *prima facie* evidence of the existence of the main fact in question. (12 C. J., p. 823, sec. 285.) The limitations are these: There must be some rational connection between the fact proved and the ultimate fact presumed; the inference of the existence of the ultimate fact from proof of the other facts must not be so unreasonable or unnatural as to be a purely arbitrary mandate . . . " Further on in the opinion, the court also said: "In our opinion, congress could not reasonably enact that possession of unstamped narcotic drugs should be *prima facie* evidence of a violation of the first penal provision of section 1."

In the case of *Simpkins* v. *State,* 35 Okl. Cr. 143 [249 Pac. 168], the court had under consideration a statute of Oklahoma providing that if a person driving an automobile had on or about his person any intoxicating liquors that fact would constitute *prima facie* evidence of such person having driven while intoxicated. After discussing the constitutional limitations as to legislation of that character the

court said: "It is apparent that the presumption here created violates this limitation, since, in order to draw the conclusion of intoxication from the fact of the driver of an automobile having intoxicating liquors on his person or in said vehicle, there must first be the inference that the driver had used the intoxicants, and the further inference that he had used them to such an extent that he was under the influence thereof to the extent of intoxication. The presumption of intoxication fixed by the statute is also contrary to the fundamental requirement that the inference or presumption of intoxication arising from the possession of the person or in the vehicle of liquors must be a probable or natural hypothesis or explanation of such possession. The inference between the fact of possession and the presumption of intoxication is too remote."

To the same effect are two recent decisions of the Supreme Court of the United States: *Manley* v. *Georgia*, 279 U. S. 1 [49 Sup. Ct. 215, 73 L. Ed. 575], where the court held unconstitutional a statute of Georgia which allowed a conviction of fraud upon mere proof of insolvency, on the ground that the statutory presumption was not rational and that the connection between the fact proved and that presumed was not rational; and *Western & Atlantic Railroad* v. *Henderson*, 279 U. S. 639 [49 Sup. Ct. 445, 73 L. Ed. 884], holding unconstitutional a statute providing for a shifting of the burden of proof on the issue of negligence upon the mere proof of a collision upon the ground that the statute cannot provide for the shifting of the burden of proof on the basis of a presumption which is arbitrary and irrational.

Many other authorities to the same effect might be cited but we deem the above sufficient for our present purpose. These cases uniformly hold that in order to sustain such a legislative presumption as that created by section 9a of said act, it is absolutely necessary that there be some rational or reasonable connection between the fact proven and the fact presumed. In the present case there is no semblance of such a connection. The mere fact that a defendant is brought into court and proof is made that he is using or is in possession of real property susceptible of producing agricultural products is made the basis of a presumption

that he is an alien ineligible to citizenship. There can be no possibility of any rational claim that the possession of land of that character by a defendant gives rise to any inference or presumption as to his alienage or citizenship. In at least some of the cases cited there may be said to be some connection, though slight, between the fact proven and the fact presumed. For instance, in the case of the driver of an automobile with intoxicating liquor in his possession, it might well be said that there is some slight although rather shadowy connection between the fact that the accused had intoxicating liquor in his possession and the fact of his intoxication, yet the court held such legislative presumption to be invalid. But in the case before us there is not the slightest connection or relationship between possession of real property and the alienage or citizenship of the person in its possession. According to the unbroken line of authorities, a presumption created by statute and based upon proof of such an unconnected and unrelated fact cannot be sustained as a valid exercise of legislative power. (*State* v. *Lapointe*, 81 N. H. 227 [123 Atl. 692, 31 A. L. R. 1212].)

Shenk, J., and Preston, J., concurred.