[Crim. No. 16009. Second Dist., Div. One. Sept. 24, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT NICHOLAS STARR, Defendant and Appellant.

## COUNSEL

Hitt & Murray and Anthony Murray for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Thomas Kallay and Russell Iungerich, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FOURT, J.***—This is an appeal from a judgment of conviction of one count of bribery.

In an indictment filed in Los Angeles on December 28, 1967, defendants Karl L. Rundberg and Robert Nicholas Starr were charged in count 1 with bribery in violation of the provisions of section 68 of the Penal Code in that they did on or about the 30th day of March 1967 in the County of Los Angeles corruptly receive from Keith Smith a bribe, namely, office furniture and equipment for the purpose of influencing the votes of defendants and upon the agreement that the votes, opinions and actions of defendants upon official matters then pending before them in their official capacity as members of the Board of Harbor Commissioners of the City of Los Angeles and upon matters which might thereafter be brought before the defendants in their official capacity should be corruptly influenced. Count 2 had to do with the receipt of $6,047.58 in money from Smith.

*Retired Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

In a jury trial each defendant was found guilty as charged in count 1 and not guilty as to the charge contained in count 2. Each defendant was sentenced to the state prison and then granted probation under certain terms and conditions. Karl Rundberg appealed from the judgment. He passed away before that appeal was heard and this court ordered on April 30, 1969, that his appeal be abated. Starr appealed from the order granting probation.

A résumé of some of the facts is as follows: appellant was appointed to the Board of Harbor Commissioners on August 31, 1965, for the term ending July 1, 1970. The appointment was confirmed by the city council on September 8, 1965, and he was sworn in as a member of the board on September 8, 1965. He resigned at the request of the Mayor on June 27, 1967, the resignation to take effect upon the confirmation of a successor. A successor was appointed.

Mr. Donald Silver, a pathologist, was the owner of Medical Science Laboratory, Inc.; in the summer of 1966 negotiations between him and appellant and Rundberg were entered into with reference to Rundberg's and appellant's purchasing certain shares in the laboratory business. Appellant and Rundberg came into the business as associates (one-third each) and about April 1967 the building facilities of the business were removed to a location on Vermont Boulevard. Appellant was in charge of the administration of the business, Rundberg served as president and Dr. Silver functioned as director of laboratories.

In about June of 1968 the secretary-treasurer of Warren Imports Interiors saw, on the premises of the Medical Science Laboratories, certain furniture, consisting among other items of a large executive desk, three black leather chairs, a red table, screens, wooden panels, conference table and chairs and a back unit for an executive desk. The major items mentioned excepting the screens were billed by Warren Imports Interiors to Keith Smith on December 29, 1965, at the Pacific Trade Center. The screens were billed on May 4, 1966. The value of these items according to the billing was $14,650.70.

Keith Smith was a real estate developer in the area of the harbor and he either owned or had a controlling interest in several corporations which did business with the harbor commissioners. Among such corporations were Altamira, Inc., Altamira Construction Company, San Sebastian Development Company, Fieldale, Inc., and the Trade Center Development Corporation. Smith had several matters before the harbor commissioners, among others, a lease by the Harbor Department for certain space in the Pacific Trade Center (a Smith building) for $160,125 per year dated October 5, 1965, and which was still in effect during the periods with which we are concerned. Starr voted for the execution of such lease. Also there was a lease of space by the Harbor Department from San Sebastian Development Company

in a building to be constructed by San Sebastian Development Company on Terminal Island at an annual rental of $303,000. Starr voted to approve the lease and later voted in favor of an assignment from San Sebastian Development Company to Trade Center Development Corporation. Starr also voted favorably on an application for a revocable permit for the use of a building on Terminal Island by Altamira Construction Company and further Starr was involved in an application by Channel Investment Company for a large hotel to be constructed on Harbor Department land. Smith's Altamira Construction Company was to do the architectural work on the project and was to be paid $35,000 for certain preliminary work if the lease was granted. There was further an application for a 50-year lease for the construction of a multi-million dollar World Trade Center. Starr voted for the granting of the lease and later voted in favor of an assignment of the lease to Trade Center Development Corporation.

Starr and Rundberg each owned one-third of Medical Science Laboratories and through negotiations by Rundberg, Medical Science Laboratories supposedly purchased the furniture heretofore referred to from Fieldale, Inc., a solely owned Smith Corporation. The furniture was delivered to Medical Science Laboratories on March 30, 1967, and part of it was returned sometime later. Rundberg and Poortinga, Smith's controller, supposedly arrived at a price of $6,500 for the furniture retained by Medical Science Laboratories which had supposedly cost San Sebastian Development Company in excess of $14,000 when new. Medical Science Laboratories was never billed for the furniture, no invoice was ever sent to Medical Science Laboratories and no chattel mortgage or conditional sales agreement was ever executed for the furniture. The third associate in Medical Science Laboratories, Dr. Silver, was never told by his associates that the furniture came from Smith or one of the latter's corporations. The books of Medical Science Laboratories indicate that the furniture was acquired from Starr and Rundberg and no liability item is recorded either to Smith or any of his corporations.

Starr was questioned by a representative of the district attorney on October 30, 1967, at which time supposedly the district attorney was unaware of the furniture transaction. Starr was asked among other things, whether Smith had anything to do with Medical Science Laboratories and Starr replied in effect that Smith had no interest in it—that Rundberg had talked with some of the Smith construction people who had done some work on the laboratory facility and that such work had been paid for and that there were no other transactions between Smith and Medical Science Laboratories.

On about December 11, 1967, Starr was again questioned by a repre-

sentative of the district attorney and at that time he admitted that Medical Science Laboratories had received some furniture from Smith.

At the trial the jury was instructed that "Evidence of an oral admission of the defendant ought to be viewed with caution."

Apparently no instruction was offered or given defining an admission such as is set forth in CALJIC 2.71. No instruction to the effect that the corpus delicti must be proved independent of any admission was given or offered by either side.

The jury, according to the minutes of the court, was instructed on July 11, 1968, and retired and started to deliberate at 10:45 a.m. of that date. A verdict was not reached on the first day of deliberation and the jury was then locked up overnight and resumed their deliberations at 9 a.m. on July 12, 1968. A verdict was not reached on July 12, 1968, and the jury was again locked up for the night. Deliberations were resumed on July 13, 1968, at 9 a.m. and at 5:55 p.m. the jury returned the verdicts of guilty on count 1 and not guilty on count 2 as to both defendants. In other words, the jury deliberated for three full days. The record on the motion for a new trial indicates quite clearly that all of the jurors voted for the not guilty verdict as to count 2 and then voted for the guilty verdict as to count 1 after at least some of the jurors engaged in conduct which raises a question regarding the validity of the verdict. (See *People v. Hutchinson,* 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132].)

█ Appellant makes many contentions; however, under the circumstances, it appears that it is only necessary to consider one of them, namely, the failure to give the instruction with reference to the establishment of the corpus delicti.

The Attorney General admits that it was error to fail so to instruct but argues that the evidence of the corpus delicti was amply established by the testimony of several witnesses and that the error was not prejudicial.

Our Supreme Court as early as 1875 in *People v. Thrall,* 50 Cal. 415, 416, said: "But even if we assume against the prisoner that, besides his own extra-judicial confessions, there was evidence given at the trial tending to prove the *corpus delicti,* the instruction asked would not, for that reason, be the less pertinent, nor would it be of less importance that the jury should be instructed that his guilt could not be established alone by his extra-judicial statements or confessions."

In *People v. Quarez* (1925) 196 Cal. 404, 408-409 [238 P. 363], the

court stated: " 'The rule is clearly established in this state that the extra-judicial statements or admissions of a defendant in the absence of other evidence of the commission of the crime charged against him are insufficient to establish his guilt [citations]; and they are equally insufficient to establish the existence of any substantive or essential element of a crime charged against the defendant. . . . The *corpus delicti* consists of the elements of the crime. *People* v. *Tapia,* 131 Cal. 647 [63 Pac. 1001]; *People* v. *Simonsen,* 107 Cal. 346 [40 Pac. 440]; *People* v. *Vertrees,* 169 Cal. 404 [146 Pac. 890].'

" . . . . . . . . . . . . . . . . . . . . . .

". . . The rule is well settled and the authorities numerous in this state that the extrajudicial statements, admissions, or confession of a defendant cannot be used to establish any necessary element of the *corpus delicti* of the crime charged. The *corpus delicti* must be established by independent evidence before the extrajudicial statements, admissions, or confession of a defendant are admissible. [Citations.]"

In *People* v. *Putnam* (1942) 20 Cal.2d 885, 890-891 [129 P.2d 367], the court related: "It is incumbent upon a court in a criminal case to instruct the jury of its own motion, charging them fully and fairly upon the law relating to the facts of the case. [Citations.] The court is not relieved of the duty to give instructions whose necessity is 'developed through the evidence introduced at the trial.' [Citation.] An instruction is necessary if it is vital to a proper consideration of the evidence by the jury. [Citations.] Accordingly, it has been held that the court must of its own motion instruct the jury in criminal cases with respect to accomplices and their testimony [citations] . . . *admission of confessions and the necessity of independent proof of the corpus delicti (People* v. *Frey, supra* [165 Cal. 140 (131 P. 127)] . . .), . . .*" (Italics added.)

In *People* v. *Dobkin* (1946) 74 Cal.App.2d 269, 277 [168 P.2d 729], the court said: "This entire matter went before the jury without any instruction respecting proof of the *corpus delicti* or respecting confessions and admissions. . . . 'admission of confessions and the necessity of independent proof of the corpus delicti,' . . . 'But . . . the court should have told the jury the true rule with reference to the admission of confessions and the necessity for independent proof of the *corpus delicti.* In such a case as this the defendant was entitled to the benefit of such a charge. The court utterly failed to instruct upon this matter and thereby committed error.' "

It is pointed out by the Attorney General that there are cases where the corpus delicti instruction was not given and the judgment was affirmed

in spite of the error. We believe the cases so cited are distinguishable from the case at hand. In *People* v. *Williams,* 189 Cal.App.2d 29, 41 [11 Cal. Rptr. 43], cited by the Attorney General the court pointed out that *there was no possible question that the crimes of robbery and burglary had been committed*—the only question being whether the defendant was connected with the acts. In *People* v. *Chavez,* 262 Cal.App.2d 422 [68 Cal.Rptr. 759], also cited by the Attorney General, the defendant was found guilty of kidnapping and rape. There the husband of the victim positively testified as did the victim with reference to the acts committed and the police testified as to the condition of the victim. In *People* v. *Holbrook,* 45 Cal.2d 228 [288 P.2d 1], another cited case by the prosecution, the defendant was charged with abortion and an attempted abortion. The prosecution had the unequivocal testimony of the victim and the friend who was interested in having the victim aborted and a full, complete and voluntary confession by the defendant. It is clear that the *Williams, Chavez* and *Holbrook* cases are in no respect similar to the case at bench.

The jury in this case considered the cause for three full days and at the latter part of the third day the vote on count 1 was nine jurors for conviction and three jurors for acquittal. The vote on count 2 was unanimous for a not guilty verdict. The Attorney General argues in effect that the evidence was overwhelming—suffice it to say that from the deliberations of the jury that body did not consider the evidence to be in any such category.

It has been suggested that under the new Evidence Code it is no longer necessary to establish the corpus delicti of an offense as the law has previously required and that presently the corpus delicti can be established solely by the extrajudicial statements of the accused. Further that even if this is not the present rule under the Evidence Code, it is provided in the code that the judge alone is to determine whether the corpus delicti has been proved and it is no longer a jury problem, and further apparently that no instruction to the jury is necessary with reference to the corpus delicti.

In Cooley on Constitutional Limitations, Eighth Edition, published in 1927, the author wrote among other things with reference to the general subject matter, as follows: "The evidence ought to be clear and satisfactory that the prisoner was neither threatened nor cajoled into admitting what very possibly was untrue. Under the excitement of a charge of crime, coolness and self-possession are to be looked for in very few persons; and however strongly we may reason with ourselves that no one will confess a heinous offense of which he is not guilty, the records of criminal courts bear abundant testimony to the contrary. If confessions could prove a crime beyond doubt, no act which was ever punished criminally would be better

established than witchcraft; and the judicial executions which have been justified by such confessions ought to constitute a solemn warning against the too ready reliance upon confessions as proof of guilt in any case. As 'Mr. Justice Parke several times observed,' while holding one of his circuits, 'too great weight ought not be attached to evidence of what a party has been supposed to have said, as it very frequently happens, not only that the witness has misunderstood what the party has said, but that by unintentionally altering a few of the expressions really used, he gives an effect to the statement completely at variance with what the party really did say.' And when the admission is full and positive, it perhaps quite as often happens that it has been made under the influence of the terrible fear excited by the charge, and in the hope that confession may ward off some of the consequences likely to follow if guilt were persistently denied.

*"A confession alone ought not to be sufficient evidence of the corpus delicti. There should be other proof that a crime has actually been committed; and the confession should only be allowed for the purpose of connecting the defendant with the offense."* (Italics added.) (Vol. 1, chapter X, pp. 652-654.)

Cooley as indicated was speaking of confessions. How much more important it is to have the established rule with reference to the corpus delicti fully effective when, as here, we have only the contradictory or prior inconsistent statements of the accused with no confession or admission in the true sense of the word.

In September 1967 after the new Evidence Code was adopted and in effect, the court in *People* v. *Lopez,* 254 Cal.App.2d 185, 188-190 [62 Cal.Rptr. 47], said: "It is well established that 'In every prosecution for crime, it is necessary to establish the *corpus delicti,* i.e., the *body* or *elements of the crime.*' [Citations.] The corpus delicti consists of two elements, namely, (1) the facts forming the basis of the appeal, i.e., the facts establishing the injury, loss or harm; and (2) the criminal agency causing them to exist. [Citations.] The establishment of the corpus delicti does not, however, require proof that the crime was committed by the defendant or by the person charged with having committed it, nor does it require proof as to the identity of the perpetrator of the crime. Rather, it is established when the prosecution proves that the crime was committed by someone. [Citations.] However, while the defendant's connection with the crime is a separate consideration [citations], proof of the corpus delicti may incidentally point to the defendant. [Citation.]

"To establish the corpus delicti it is not essential to show beyond a reasonable doubt that the crime was committed, but only a slight or prima facie showing is sufficient. [Citations.] In making such showing circum-

stantial evidence will suffice [citations], and the corpus delicti may be proved by inferences drawn from the facts shown. [Citations.] *It is fundamental, moreover, that the corpus delicti must be proved by evidence independent of the extrajudicial declarations and statements of the defendant. (People* v. *Amaya, supra* [40 Cal.2d] at p. 75 [251 P.2d 324]; *People* v. *Mehaffey, supra* [32 Cal.2d] at p. 544 [197 P.2d 12]; *People* v. *Corrales,* 34 Cal.2d 426, 429 [210 P.2d 843].) However, once a prima facie corpus delicti is established independently of such extrajudicial declarations or statements of the defendant, such statements become admissible and are given their full evidentiary effect, that is, they may be considered by the jury in its determination of whether or not all the elements of the crime and the accused's connection therewith have been established beyond a reasonable doubt. [Citations.]" (Italics added.)

In June 1969 in *People* v. *Quicke,* 71 Cal.2d 502, 521 [78 Cal.Rptr. 683, 455 P.2d 787], our Supreme Court in reiterating the rule stated: "We said in *People* v. *Amaya* (1952) 40 Cal.2d 70, at pages 75-76 [251 P.2d 324]: '[*T*]*he corpus delicti must be proved by evidence independent of the extrajudicial declarations and statements of the defendant . . . so that he may be protected against the possibility of fabricated testimony which might wrongfully establish the crime and the perpetrator.*' Here we cannot suppose that the prosecution fabricated the report of defendant's testimony at the first penalty trial; indeed, that record is now before us." (Italics added.)

In July 1969 this court, speaking through Justice Herndon, and concurred in by Presiding Justice Roth and Justice Wright, in *People* v. *Scott,* 274 Cal.App.2d 905, 907 [79 Cal.Rptr. 587], said: "The applicable law is stated and the controlling precedents are cited in the following quotation from *People* v. *Bolinski,* 260 Cal.App.2d 705, 714-715 [67 Cal.Rptr. 347]:

" 'The corpus delicti of murder consists of two elements: the death of the alleged victim and the existence of some criminal agency as the cause, either or both of which may be proved circumstantially or inferentially. [Citations.] *The elements must be* established independently of admissions or confessions of the defendant [citations], but as a basis for introduction of the defendant's confession or admission, the prosecution is not required to establish corpus delicti by proof as clear and convincing as is necessary to establish guilt; a slight or prima facie showing is sufficient. [Citations.] Once corpus delicti is shown by independent evidence, the degree of the crime not being a part of the corpus delicti, the circumstances of the murder and its degree may be shown by extrajudicial statements of the

accused. [Citations.] It is for the trial court to determine whether a prima facie showing has been made. [Citations.]' " (Italics added.)

" 'Production of the body of the missing person or of evidence of the means used to produce death are not essential to the establishment of corpus delicti or to sustain a murder conviction. [Citations.]' "

We are satisfied from a careful examination of the entire cause, including the evidence, that it cannot be held that the error in failing to give the required instruction, telling the jury that no person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any admission made by him outside the trial, was not prejudicial. ▪ We do not believe that such a firmly established and fundamental rule of the criminal law of years' standing was overruled by any vague and indecisive provision in the Evidence Code—nor do we believe that the Legislature so intended.

The judgment is reversed.

Wood, P. J., concurred.

**GUSTAFSON, J.**—I dissent.

The rule requiring proof of the corpus delicti by evidence other than the extrajudicial statements of the defendant was the result of a judicial decision, not of any statute. No case has considered the effect of the Evidence Code[1] on the rule.

The first question is whether the Evidence Code abrogated the rule.

On the one hand, it is arguable that the rule survived the adoption of the Evidence Code. Section 1220 of the Evidence Code was intended to state the existing law as found in subdivision 2 of repealed section 1870 of the Code of Civil Procedure. Despite the fact that subdivision 2 permitted as evidence against a party his "act, declaration, or omission," the Supreme Court held that in criminal cases there must be evidence of the corpus delicti other than what is contained in the extrajudicial statements of the defendant.

On the other hand, it is arguable that the rule did not survive the adoption of the Evidence Code. "Except as otherwise provided by statute, all relevant evidence is admissible." (Evid. Code, § 351.) The prior law did not contain any such sweeping prohibition of court decisions on the inadmissibility of evidence. Before the Evidence Code, courts "had to develop many, if not most, of the rules of evidence with but partial

---

[1]The Evidence Code became operative January 1, 1967. (Evid. Code, § 12.)

guidance from the statutes."[2] The Evidence Code was designed to be "an official handbook of the law of evidence—a kind of evidence bible for busy trial judges and lawyers."[3] It does not serve that purpose if court-made rules excluding evidence are to exist and not be found in the Evidence Code.

Since a "statute" includes a constitutional provision (Evid. Code, § 230), it is necessary to determine whether the corpus delicti rule is so indispensable to a fair trial that it is encompassed within the due process clause of the federal[4] or state[5] Constitution. I can find no evidence that it is.

In my view the better of the two positions is that the corpus delicti rule did not survive the adoption of the Evidence Code. If that is not what the Legislature intended, an amendment to the Evidence Code can easily be made although, for reasons I have stated elsewhere,[6] I think the corpus delicti rule is illogical, unsound and unnecessary.

The second question is whether, assuming that the corpus delicti rule survived the adoption of the Evidence Code, the determination of whether there is proof of the corpus delicti by evidence other than the extra-judicial statements of the defendant is to be made by the judge or by the jury. I think the Evidence Code has clearly made the determination one for the judge.

As I understand it, the corpus delicti rule is one of the admissibility of evidence. In *People* v. *Frey* (1913) 165 Cal. 140 [131 P. 127] it was held that the trial court on its own motion "should have told the jury the true rule with reference to the *admission* of confessions and the necessity for independent proof of the corpus delicti." (Italics added.) When a prima facie showing that the crime charged has been committed by someone, the "defendant's extra-judicial statements are then *admissible* . . ." (*People* v. *Cullen* (1951) 37 Cal.2d 614 [234 P.2d 1]. Italics added.) "It is, of course, elementary that admissions cannot be *introduced* until proof of the corpus delicti has been made." (*People* v. *Howk* (1961) 56 Cal.2d 687 [16 Cal.Rptr. 370, 365 P.2d 426]. Italics added.) "It is unquestioned that [an extrajudicial statement by the defendant] is *inadmissible* in the absence of independent proof of the corpus delicti." (*People* v.

---

[2]Cal. Law Revision Com. Rep. (1965), p. 30.

[3]7 Cal. Law Revision Com. Rep. (1965), p. 34.

[4]U.S. Const., 14th Amend.

[5]Cal. Const., art. I, § 13.

[6]Gustafson, *Have We Created A Paradise For Criminals?* (1956) 30 So.Cal.L.Rev. 1, at p. 8.

*Hamilton* (1963) 60 Cal.2d 105 [32 Cal.Rptr. 4, 383 P.2d 412]. Italics added.)

The admissibility of a defendant's extrajudicial statements is conditioned upon a prima facie showing of the "preliminary fact"[7] of the corpus delicti. Section 405 of the Evidence Code provides that when "the existence of a preliminary fact is disputed," the "court shall determine the existence or nonexistence of the preliminary fact and shall admit or exclude the proffered evidence as required by the rule of law under which the question arises." Thus, for example, the judge, not the jury, determines that a confession or admission shall be excluded from evidence because it was obtained in a manner violative of the defendant's constitutional rights. If the judge admits the extrajudicial statement, the jury's only task is to determine the truthfulness of the statement.

I submit that in most instances the determination of whether there has been a prima facie showing of the corpus delicti is simple as compared to the determination of whether a confession is, for example, voluntary. Moreover, a judge is much better suited to understand whether a prima facie case has been established than is a jury. In the case at bench, the defendant did not object to the introduction of his extrajudicial statements on the ground that no corpus delicti had been shown and he did not later move to strike the testimony regarding his extrajudicial statements on that ground. Thus this was a case in which the existence of the preliminary fact (i.e., some evidence that a bribe had been given to defendant) was not even disputed within the meaning of section 405 of the Evidence Code.

Before the Evidence Code was adopted, the procedure applying the corpus delicti rule resulted in confusion of the jury. In *People* v. *Cullen* (1951) 37 Cal.2d 614 [234 P.2d 1] the judge "stated in the jury's presence the previous conclusion that the prosecution had produced prima facie proof of the corpus delicti to satisfy the legal requirements for admissibility of the defendant's declarations." Then he instructed the jury that it was required to find whether the corpus delicti had been established. Although the Supreme Court said that there was no merit in the defendant's contention that he was not given the benefit of the jury's determination of that issue, it would be surprising indeed if a jury, having heard the judge rule that the corpus delicti was established, would find that it was not established. In *People* v. *Spencer* (1963) 60 Cal.2d 64 [31 Cal.Rptr. 782, 383 P.2d 134] the judge instructed the jury that it was required to find that the corpus delicti had been established "to authorize the reception of

[7]"As used in this article, 'preliminary fact' means a fact upon the existence . . . of which depends the admissibility . . . of evidence. . . ." (Evid. Code, § 400.)

such declarations and statements in evidence and their consideration by the jury." He also instructed: "Whether offered evidence is admissible is purely a question of law." Although the Supreme Court found nothing inconsistent in these instructions, it seems to me that a jury would necessarily be confused by the instructions.

The current standard instruction on the corpus delicti (CALJIC (3d ed.) No. 2.72) states in part: "No person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any confession or admission made by him outside of this trial." While this instruction does not speak expressly in terms of the admissibility of evidence, the fact remains that the net effect of the instruction is to direct the jury to disregard the extrajudicial statements of the defendant "unless there is some proof of each element of the crime independent of" the extrajudicial statements. This requires "jurors to perform the impossible task of erasing the hearsay statement from their minds if they conclude that the condition of admissibility has not been met." (6 Cal. Law Revision Com. Rep. (1964) p. 30.) It was this very task which section 405 of the Evidence Code was designed to eliminate.

The majority opinion in this case does not attempt to explain why, if the rule does exist, its application remains for the jury despite the clear declaration to the contrary contained in section 405 of the Evidence Code. That problem is too important to ignore and I do not believe it is met by citing cases in which the question was not raised.

In summary, I believe that the corpus delicti rule did not survive the adoption of the Evidence Code but that if it did, the jury no longer has the function of determining whether the corpus delicti has been established. The failure to instruct the jury on this subject in the case at bench was not error because no jury should be instructed on the subject.

I would affirm the judgment.

A petition for a rehearing was denied October 20, 1970. Gustafson, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied December 15, 1970. Wright, C. J., and Mosk, J., were of the opinion that the petition should be granted.