[Crim. No. 2848. Fourth Dist., Div. One. Dec. 7, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES WAYNE KENNEDY et al., Defendants and Appellants.

Michael S. Hegner, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Plaintiff and Respondent.

WHELAN, J.—Defendants James Wayne Kennedy (Kennedy) and Charles Eugene Nitz (Nitz) appeal from judgments imposing prison sentences upon defendants respectively for possession of heroin.

Kennedy and Nitz were found guilty of possession of a

narcotic, heroin (Health & Saf. Code, § 11500), transporting heroin (Health & Saf. Code, § 11501), and possessing marijuana (Health & Saf. Code, § 11530).

Kennedy was found, also, to have suffered two prior convictions for possession of a narcotic; Nitz to have had three prior convictions for sale of a narcotic and one for conspiracy to violate Health and Safety Code, section 11500.

The points raised on appeal are these: a claim that the contraband received in evidence over the objections of defendants was the product of an illegal search and seizure; that the evidence is insufficient to support a finding of guilt; that the trial judge had actual bias against defendants; and that the trial judge did not have jurisdiction to try defendants because he erred in not allowing a challenge intended to be made under section 170.6, Code of Civil Procedure.

 WAS THERE AN ILLEGAL SEARCH?

*No.* The claim of defendants is premised upon the claimed lack of probable cause to make an arrest with a search incidental thereto.

In fact the searches made were with the express consent of defendants and two other persons, Ypma and May, who were their companions at the time of the arrests. While the question of probable cause to make the arrests is not of controlling materiality, we are of opinion that there was such probable cause.

Deputy Sheriffs Cornette and Burroughs stopped a northbound 1954 Ford on Highway 101 between Del Mar and Solana Beach at about 2 a.m. on March 3, 1966. They had observed it being driven in an erratic manner in the right lane at about 30 to 35 miles per hour. When the officers turned on their red lights, the Ford slowed to 5 to 10 miles per hour and continued northbound on the shoulder for about four blocks before coming to a stop. After it had gone at that rate of speed for two blocks, the officer flashed a spotlight through the rear window of the Ford to attract the driver's attention so that he would come to a complete stop, and observed three men and a woman moving around very actively, and leaning over.

When the Ford stopped, the driver, Kennedy, alighted, stepped back quickly toward the police car, and was met by the officers between the two vehicles. Kennedy produced his driver's license, but had no evidence of being the registered owner of the car. He invited the officers to look for the registration certificate in the glove compartment where one of them

found a box of pills issued under a prescription in a name other than that of any of the four occupants of the car. The deputies noticed that Kennedy was hyperactive, appeared nervous and that the pupils of his eyes remained contracted under bright light.

The Ford did not have its 1966 license tabs, a fact which had not been observed before the car came to a stop because there was no light over the license plate.

The other three occupants of the car were asked to alight; all four were asked if they objected to emptying their pockets and if Miss May objected to showing the contents of her purse. What appeared to be part of a marijuana cigarette was in Miss May's coin purse; a part of another marijuana cigarette was among cigarettes in a packet produced by Ypma.

Kennedy several times spontaneously invited the officers to look through the car; declared that it was ''clean'' and he was ''clean.'' He had earlier told them he had been convicted of a narcotic offense and was on parole.

On looking again in the car, one of the deputy sheriffs found a hypodermic needle behind the back seat cushion where Nitz and Ypma had been sitting. All four were placed under arrest and taken to the Encinitas office of the sheriff, to which Kennedy drove his car. There all four were asked if the officers might make a further search of the car, to which all signified consent. That search disclosed a rubber container filled with heroin on the drive shaft tunnel directly under the front edge of the front seat on the driver's side.

One of the officers testified to the consents to search. Miss May also testified that the three other occupants voluntarily disclosed the contents of their pockets and she of her purse; and as to the requests made and the consents given to a search of the car.

The second officer, Burroughs, was called as a witness by defendants, and in so testifying corroborated that Kennedy had spontaneously invited a search of the car.

A urine sample taken at the county jail was analyzed and showed both Kennedy and Nitz to be under the influence of an opium derivative.

■ WAS THE EVIDENCE SUFFICIENT TO SUPPORT A FINDING OF GUILT?

*Yes.* In addition to the other matters hereinbefore set forth, Miss May testified in effect that Nitz, when the car was still in motion. had passed to her a marijuana cigarette which she ingested orally; that in response to a request from one of the

persons in the back seat that she get rid of the stuff, she picked up the partially consumed cigarette from the front seat and put it in her purse.

Nitz testimonially stated that the heroin in the rubber container and the hypodermic needle were his. However, the place where the heroin was found is indicative that Kennedy, too, may have exercised dominion and control over it.

■ Is The Claim Of Actual Bias Against The Trial Judge Sustained?

*No.* The basis of the claim is that, because Judge Thomas had passed upon the application for probation of Miss May and, perhaps, of Ypma, and had read the probation report, he had "knowledge of . . . facts which," under section 170 of the Code of Civil Procedure, disqualified him to sit in the trial.

We are of opinion that a judge is not disqualified to try a criminal case against certain defendants merely because he may have previously in a separate trial heard the case of a codefendent or may have passed upon the application of a codefendant who has pleaded guilty. The knowledge of "fact or facts" mentioned in section 170 is not the information gained at second hand from the lips of witnesses in a trial or from a probation report.

■ Should The Attempted Challenge Of Judge Thomas Under Section 170.6, Code Of Civil Procedure, Have Been Allowed?

*No.* Section 170.6 declares that any affidavit filed pursuant to its provisions shall be substantially in the form set out in the section, which provides for inclusion of the name of the judge intended to be challenged. The affidavit filed here did not include the name of any judge. True, a written notice of motion filed two days after, and dated one day after, the affidavit, set out the name of Judge Thomas and referred to the affidavit. No doubt if the affidavit had referred to another document already in existence naming Judge Thomas and incorporated it by reference, that might have satisfied the requirements of the statute; but the affidavit made no such reference and no such document appears to have been in existence when the affidavit was filed; the written notice of motion was a superfluity.

The affidavit of challenge is not intended to be a blanket to cover any judge known or unknown at the time the affidavit is filed. It must, therefore, set out the name of the judge against whom the challenge is directed. If it fails to do so and it be

not amended in the trial court to show such name, it is insufficient as an affidavit under section 170.6. The insertion of the name of the judge intended to be challenged is a matter of substance.

Additionally, the attempted challenge was not timely.

On April 18, 1966, both defendants with counsel appeared in department 9 when the judge supervising the master criminal calendar gave the case a trial date of June 3, 1966 at 10 a.m. The minutes recite as to defendant Kennedy: "The defendant reserves the right to make appropriate motions within a reasonable time."

On June 2 both defendants appeared in the department of the judge supervising the master criminal calendar for the purpose of making motions to dismiss the indictment and to suppress evidence. The cause was then continued in the same department until June 3 at 9 a.m. The case was assigned to Judge Thomas by the judge supervising the master criminal calendar on June 3, 1966. On that day defendants personally waived a trial by jury before Judge Thomas, who permitted the waiver to be made and dismissed the jury panel that was in attendance. Defendants then argued to Judge Thomas the motions to dismiss under section 995, Penal Code, and to suppress evidence claimed to have been seized unlawfully. The case was then continued by Judge Thomas until June 6 in his own department.

On June 6, with all parties present, Judge Thomas announced his denial of the two pending motions made by defendants. At that time he was engaged in the trial of People v. Ballard and ordered the trial of Kennedy and Nitz to trail in his own department until the end of the Ballard trial.

The records of this court show that after the denial of their motion, made under section 995, Penal Code, defendants filed a petition for a writ of prohibition in this court which was denied on June 21, 1966.

On July 18 at 5 p.m., counsel for defendants filed with the clerk the affidavit which we have referred to and which mentioned "the judge before whom the aforesaid action is pending" without naming him.

On July 19 all the parties appeared when court convened at 9:53 a.m. The minutes recite: "This being the time heretofore set for trial of the above entitled cause. . . ."

The filing of the affidavit of challenge was brought to the court's attention. The district attorney moved for a continuance of the trial to July 26, which was granted. The court

reserved a ruling on the challenge to the judge.

On July 21 defendants filed the written motion to disqualify Judge Thomas, which we have mentioned, dated July 20.

On July 26 all parties appeared. The court ruled that the attempted challenge had not been made within the time prescribed by the statute and refused to recognize it.

This court held, in *People* v. *Hernandez*, 242 Cal.App.2d 351, 357 [51 Cal.Rptr. 385], that unless a motion to disqualify " 'directed to the trial of a cause where there is a master calendar' " is made to the judge supervising the master calendar not later than the time the cause is assigned for trial, it is made too late.

Defendants cite *Fairfield* v. *Superior Court*, 216 Cal.App.2d 438 [31 Cal.Rptr. 3], and *Eagle Maintenance & Supply Co.* v. *Superior Court*, 196 Cal.App.2d 692 [16 Cal.Rptr. 745].

In neither the *Eagle Maintenance* nor the *Fairfield* case does it appear that the case was assigned on the date set for trial to a trial judge by the judge supervising the master calendar.

In *Fairfield* v. *Superior Court, supra,* 216 Cal.App.2d 438, during the pendency of an appeal from a former judgment, the case was assigned for all further proceedings to a superior court judge. Some four months later, after the remittitur had issued and before a trial date had been fixed, an affidavit under section 170.6 was filed. It was there held that the challenge was timely because the case could not be and was not set for retrial until after the remittitur came down.

From the *Eagle Maintenance* opinion, defendants cite certain sweeping language, as follows: " [A]ny such motion and affidavit to disqualify a trial judge under the provisions of section 170.6 are timely filed if presented at least five days before the last scheduled date for trial where the judge who is assigned to or scheduled to try the cause is known to the party or his attorney at least 10 days before such date.'' (P. 695.)

In *Eagle Maintenance,* the trial was postponed for a period of more than 97 days in the same department in which the trial date had earlier been set. A motion and affidavit under section 170.6, Code of Civil Procedure, was filed five days before the postponed trial date to disqualify the judge who had so far handled the matter. In granting the petition for a writ of prohibition, the Court of Appeal said: "[O]ver 97 days elapsed between the date first set for the retrial and the

date upon which the cause was finally scheduled to be tried. It is possible during such a period that a party or an attorney to the proceeding might discover something, whether based on fact or not, which would cause him to believe that the trial judge is prejudiced and that he cannot have a fair and impartial trial before him.

" . . . . . . . . . . . . .

"It is to be noted further that the cause of action herein was assigned to a particular department of the superior court, not to a specific judge. There are, as of this date, 120 departments of respondent court and we think it is a matter of common knowledge among lawyers that there are many transfers of judges from one department to another throughout the year, due among other things to the absence of judges for normal sick leave and vacation periods. Under these circumstances where a case is continued for a substantial period of time, it would place an undue hardship upon a litigant or his counsel to compel him to know before the first scheduled trial setting, what judge would be assigned to try his case in a particular department of the court where the trial date has been set over." (*Eagle Maintenance & Supply Co.* v. *Superior Court,* 196 Cal.App.2d 692, 694-695 [16 Cal.Rptr. 745].)

We consider that those excerpts set out the *ratio decidendi* and that the earlier quoted statement is dictum.

We are mindful that in situations that parallel those of *Eagle Maintenance & Supply Co., supra,* and *Fairfield, supra,* a party may be denied the benefit of the provisions of section 170.6 should he exercise a challenge when the case has been first assigned to a certain department or a certain judge without a fixed trial date, or with a date far in the future. Since he may exercise but one challenge he deprives himself of the effect of section 170.6, Code of Civil Procedure, if he asserts the challenge to a judge who, in the event may not try the case even though not challenged. That, although undefined, we believe to be the main drift of the reasoning behind the *Eagle Maintenance* and *Fairfield* decisions.

The language of the statute contemplates that the identity of a judge who is to try a case may be known 10 days or more before the trial date. However, if the quoted dictum of the *Eagle Maintenance* case be given its logical extension, if any such judge on the original trial date had not yet been chal-

lenged and then continued the trial date by as much as 10 days, he could be successfully challenged at any time five days prior to that date; and, presumably under such reasoning, if the judge continued the trial for less than 10 days, he could then be challenged any time prior to the commencement of the trial.

The defendants here failed to exercise their challenge at the time the case was assigned to Judge Thomas by the judge supervising the master criminal calendar, that having been the date set for trial and when a jury was present for the purpose of trial; even after the judge, on June 6, made his unfavorable rulings on defendants' motions for a dismissal and to suppress evidence, when, if the time to challenge had not passed, it might be supposed a motive for challenge became evident, and until the last minute of the day before the time Judge Thomas was ready to try the case, defendants showed no diligence in attempting to exercise a challenge.

Although unintended, the effect of a belated attempt to use a challenge will often serve the purpose of delay. We have noted that on April 18 when the case was given the trial date of June 3, mention was made of possible motions to be made on behalf of Kennedy "within a reasonable time." Such motions were first presented to the court on June 2. It appears also that Judge Thomas was free to commence the trial on June 3, but devoted the day instead to hearing defendants' tardy motions.

While section 170.6, Code of Civil Procedure, should be liberally construed, it is necessary to preserve the objective that the challenge should be presented, if possible, before the date of trial, to the end that judicial time and manpower should not be wasted by leaving the challenged judge idle for a day or part of a day, and to the end that a trial be not continued because of the unavailability of another judge.

It remains only to be noted that, contrary to the Attorney General's contentions, neither the acceptance of a jury waiver by the trial judge, nor the passing upon a motion made under section 995, Penal Code, is the determination of a contested factual issue (cf. *Kohn* v. *Superior Court,* 239 Cal.App.2d 428 [48 Cal.Rptr. 832]); nor is the passing upon a motion to suppress evidence decided only upon the transcript of proceedings before a grand jury.

At the time of pronouncement of judgment, defendants were sentenced only on the charge for possession of heroin (count one).

The convictions are affirmed. The judgment imposing the sentence now being served on count one (violation of Health & Saf. Code, § 11500) is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied January 2, 1968.