[Crim. No. 21357. Second Dist., Div. Four. Oct. 31, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT TOQUINTO ESCOBEDO, Defendant and Appellant.

## COUNSEL

Barry Tarlow and Lorne B. Dubin for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Howard J. Schwab and Lawrence P. Scherb II, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FILES, P. J.**—This is an appeal from a judgment upon a plea of guilty of possession of amphetamine. (Health & Saf. Code, § 11910; see new

§ 11377.) Appellate jurisdiction is conferred by subdivision (m) of Penal Code section 1538.5 which allows this appeal for the purpose of reviewing the ruling of the superior court in refusing to suppress evidence obtained by search and seizure.

The principal issue to be decided is whether the trial judge who denied a motion to suppress had been disqualified by a declaration filed under section 170.6 of the Code of Civil Procedure.

Pursuant to appellant's request for augmentation of the record, and in order to have the complete procedural history leading to the attempt to disqualify the judge who heard the suppression motion we have ordered the superior court file transmitted and made a part of the record on appeal. (Rule 12a, Cal. Rules of Court.)

An information was filed July 31, 1970, charging appellant and Mrs. Chavira jointly in two counts: count I, possession of secobarbital for sale, and count II, possession of amphetamine for sale. (Health & Saf. Code, § 11911; see new § 11378.)

On September 17, 1970 both, represented by attorney Barry Tarlow, pleaded not guilty before Judge Rosenthal in department E in the northwest branch of the superior court. On that date a motion to set aside the information under Penal Code section 995 was set for hearing on October 8 in department G and a motion under Penal Code section 1538.5 and trial were set for November 24 in department D.

On October 8, both defendants being represented by attorney Tarlow, Judge Tuthill in department G denied the motion to set aside the information under Penal Code section 995. On November 24 in department D, where Judge Fagan was presiding, the hearing on the motion under Penal Code section 1538.5 and the trial were continued to January 22, 1971, at the defendants' request.

On January 15, 1971, attorney Tarlow filed a document stating that the defendant Chavira "exercises her challenge" to Judge Fagan "pursuant to the provisions of the Code of Civil Procedure Section 170.6." This was accompanied by an affidavit of attorney Tarlow reciting that Judge Fagan was "prejudiced against the interests of the party so that affiant believes that she cannot have a fair and impartial hearing before such judge."

The court treated these papers as an effective disqualification of Judge Fagan and, on January 21, the case was transferred to department E "for trial setting." On January 22, Judge Ackerman, in department E, ordered the pending motion and trial set in department F on March 9.

On March 9 the parties appeared in department F where Judge Hanson was presiding. Attorney Tarlow again appeared for both defendants. By stipulation the matters were continued to May 19.

On May 19 the parties and counsel appeared in department F, Judge Hanson presiding. Attorney Robert Harris announced that he would thereafter represent Mrs. Chavira because there was a conflict of interest between the defendants. He asked time to prepare. The right to a speedy trial was again waived and the case was continued to June 30.

On June 24 attorney Tarlow filed another "exercise of challenge," this second one being on behalf of appellant and against Judge Hanson. It recited that "This challenge is based on Code of Civil Procedure Section 170.6 and the attached declaration" and further stated: "It is defendant's position that based on the attached declaration, the files and records of the case, the fact that the codefendant has retained a separate attorney because of a conflict of interest, that in fact a conflict of interest exists between the parties." This was accompanied by attorney Tarlow's declaration stating as follows: "A conflict of interest exists between the defendant, Robert Escobedo, and the codefendant. This conflict results from the fact that both of them are jointly charged with the possession of the contraband found in Mrs. Chavira's home. Robert Escobedo's defense is that the contraband belongs to Mrs. Chavira. L. Thaxton Hanson, the judge before whom the above action is pending, is prejudiced against the interests of Robert Escobedo so that declarant believes that Robert Escobedo cannot have a fair and impartial hearing before such judge."

When the case came on for hearing before Judge Hanson in department F on June 30, the court denied any bias or prejudice and declared that the challenge was not timely filed. This colloquy ensued:

"MR. TARLOW: It is our position that they can be filed five days before trial, your Honor. I'm sure your Honor is aware of it.

"THE COURT: That's your position but the position of the Court is that that must be filed at the time of assignment to this Court in Department E, the criminal master calendar. It will be denied." A minute order prepared for that date also recites that the motion was denied and adds "Court finds that the motion is not timely filed."

Inasmuch as the court was then in the midst of a jury trial in another case, this matter was continued to August 12.

On August 12 and 13 Judge Hanson heard and denied the motion to suppress evidence. The trial and a motion to sever the trial of the two defendants were continued to August 16 in department F.

On August 16, for reasons not indicated by the order, but apparently because the defendants had announced their intention to change their pleas, the matter was transferred to Department E. There, where Judge Rosenthal was presiding, the defendants changed their pleas. Appellant pleaded guilty to possession of amphetamine, a lesser offense included in count II.

### Scope of the review

The effectiveness of the attempted disqualification of Judge Hanson is an issue to be decided on this appeal despite appellant's subsequent plea of guilty before another judge. Subdivision (m) of Penal Code section 1538.5 explicitly entitles a defendant to appellate review of the ruling on the motion to suppress notwithstanding the fact that the conviction is predicated upon a plea of guilty. Under the settled construction of Code of Civil Procedure section 170.6, if Judge Hanson was disqualified his ruling would be void. (*Woodman* v. *Selvage* (1968) 263 Cal.App.2d 390, 396 [69 Cal.Rptr. 687].) A review of the court's ruling on the motion necessarily includes a review of whether the record shows the judge who decided it was not legally qualified to do so.

### The timeliness of the motion to disqualify

It appears that Judge Hanson denied that motion for his disqualification upon the ground that it was untimely, stating that it "must be filed at the time of assignment to this court in Department E, the criminal master calendar."

At the request of the Attorney General we take judicial notice that at the time in question department E was the "Master Calendar Department" of the Northwest District of the Los Angeles Superior Court, as that term is used in rule 248, California Rules of Court.

The critical language in section 170.6 is in the second and third sentences of subdivision (2): ". . . Where the judge or court commissioner assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion shall be made at least five days before that date. If directed to the trial of a cause where there is a master calendar, the motion shall be made to the judge supervising the master calendar not later than the time the cause is assigned for trial. . . ."

The question here to be decided is whether the 10-day-5-day provision of the second sentence applies (as appellant contends) or whether the master calendar provision of the third sentence governs (as the Attorney General contends).

In exploring the interpretation of section 170.6 some reference to its history and purpose is pertinent.

The long struggle which led to the eventual enactment of section 170.6 in 1957 is referred to in *Johnson* v. *Superior Court* (1958) 50 Cal.2d 693 [329 P.2d 5]. (See also 32 State Bar J. 526 (1957).) In arriving at the text which ultimately became law, the Legislature had the benefit of the experience of other states, as well as the advice of lawyers and judges who had wrestled with the problem of how to accomplish the legislative purpose without unduly impairing the efficiency of trial courts. The 1957 statute was made applicable only to civil cases, but a 1959 amendment extended its use to criminal cases.

The time limitations upon the motion to disqualify reflect the Legislature's way of accommodating the conflicting needs of the litigant and the court, where the party wishes to postpone his motion until he is fully informed, and the court requires time to make adjustments after a disqualification. The practical problems were and are self-evident.

Cases are commonly assigned to departments of the superior court, and not to judges, but such an assignment is ordinarily regarded as notice that the judge then regularly sitting in the named department will hear the matter. (See *People* v. *Roerman* (1961) 189 Cal.App.2d 150, 164 [10 Cal.Rptr. 870].) But even though a judge is assigned to a department "permanently" or for a fixed period, the litigant cannot be certain that a change will not occur with little or no notice due to illness, vacation or a reassignment of the judge by the presiding judge of the court. Thus a litigant may wish to delay making his motion either because of doubt about what judge will be in the department on the day of hearing, or because he may later learn something which will lead him to believe that the judge is or is not prejudiced against him. (See *Eagle Maintenance & Supply Co.* v. *Superior Court* (1961) 196 Cal.App.2d 692, 694 [16 Cal.Rptr. 745].)

The Legislature was also aware that the disqualification of a trial judge will require either a reassignment of the case or a transfer of a judge from other business, sometimes causing delay of the hearing and inconvenience to the court and to other litigants. Such hardships may be avoided or mitigated if the disqualification is known an appreciable time before the trial

date. The 10-day-5-day provision is a compromise between the conflicting objectives, whereby the litigant has a few days after the case is assigned in which to assess his position, and the court has a few days in which to make the necessary adjustment after a disqualification.

However, the Legislature also was aware that in counties having three or more judges, rule 223, California Rules of Court (formerly rule 10 of the 1949 Rules for Superior Courts) required that civil cases be set on a master calendar, which would not allow counsel to know who the trial judge would be until the day of trial.[1] The important characteristics of this master calendar system are that "all civil cases assigned trial dates shall be placed on a master calendar composed of all cases set for trial on that day" and that "the cases thereon ready for trial shall be transferred to any department of the court that is available." When a ready case is assigned to a ready department it would be impracticable to allow the litigant five days to consider the advisability of a disqualification motion, with the trial department ready and able to commence the trial forthwith. The Legislature resolved that problem by requiring that the motion be made, if at all, in the master calendar department immediately upon the announcement of the assignment, thereby permitting the judge in the master calendar department to make an immediate assignment to another department and immediately to utilize the challenged judge for some other pending case.

On the other hand, rule 248, California Rules of Court (formerly rule 35 of the 1949 Rules for Superior Courts) provided for alternative methods of assigning criminal cases in Los Angeles and San Francisco Counties.[2]

---

[1] Rule 223: "(a) [Necessity and supervision] In all counties wherein the court is composed of three or more judges, all civil cases assigned trial dates shall be placed on a master calendar composed of all cases set for trial on that day. The master calendar shall be under the supervision of the Presiding Judge or a judge designated by the judges for that purpose.

"(b) [Calling of master calendar] The master calendar shall be called prior to 10:00 a.m. at a time fixed by the judge supervising the calendar, and the cases thereon ready for trial shall be transferred to any department of the court that is available. Cases may be transferred at any time before the regular time fixed for adjournment.

". . . . . . . . . . . . . . ."

[2] Rule 248: "(a) [Criminal departments] The Presiding Judges in Los Angeles and San Francisco Counties shall designate a sufficient number of departments to hear all criminal cases within the time required by law and shall assign the judges to preside therein. The criminal departments shall constitute a separate group to be known as the Criminal Division and the Presiding Judge shall designate one of the departments as the Master Calendar Department of the Criminal Division. The work of the Master Calendar Department of the Criminal Division shall be subject to the supervision of the Presiding Judge.

That rule provided for a "Master Calendar Department" for criminal cases, but it gave the courts of those counties the option of assigning criminal cases to departments for future trial or holding them for master calendar assignment. ■ Where a criminal master calendar department chooses to assign a case to a trial department well in advance of the trial date (instead of setting it on a master calendar) the litigant will ordinarily know what judge is scheduled to try the case more than 10 days before the trial, and he can make his motion under the 10-day-5-day provision of section 170.6.[3]

It seems apparent, not only from the history and purpose of section 170.6, but from its text, that the important distinction was not whether the case came from a "master calendar department," but whether it had been assigned from a master calendar. Section 170.6 does not mention a master calendar department. ■ The rule is that "where there is a master calendar" the motion shall be made to the judge supervising the master calendar.

The assignment of the case at bench to Judge Hanson was not from any master calendar. After Judge Fagan was disqualified, an order was made on January 21, 1971, transferring the case to department E, which was the master calendar department. On January 22 the judge sitting in department E, as the judge of that department, ordered the motion to suppress and trial set in department F on March 9. It is thus clear that department E was exercising the option given by rule 248 to assign the case for future trial, rather than place it on a master calendar to be as-

---

"(b) [Master Calendar Department of the Criminal Division] All informations, indictments, accusations and other criminal proceedings shall on filing be assigned automatically to the Master Calendar Department and all proceedings prior to trial of any issue of fact shall be heard and determined in said department; provided, however, when necessity or convenience requires, the judge of the Master Calendar Department may transfer any matter pending before him to another department, and he may transfer any matter assigned to one department to another department.

"(c) [Transfer to trial departments] Upon a plea other than a plea of guilty, the case shall be assigned a trial date by the judge of the Master Calendar Department and transferred to a trial department or held for later transfer. The trial departments shall advise the Master Calendar Department promptly of any change occurring or about to occur in their trial calendars.

"(d) [Continuances] Motions for continuances shall be noticed in the department in which the case is pending and shall be made at the earliest practicable time."

[3]*Eagle Maintenance & Supply Co.* v. *Superior Court* (1961) 196 Cal.App.2d 692 [16 Cal.Rptr. 745], and *Fairfield* v. *Superior Court* (1963) 216 Cal.App.2d 438 [31 Cal.Rptr. 3], are illustrative. In each case there was an assignment to a trial department a considerable time before the parties were able to go to trial. The appellate court in each case held that the motions to disqualify were timely because filed five days or more before the actual trial date.

signed when ready to any department then available. ▆▆▆ The 10-day-5-day time limit of section 170.6 applied. The motion to disqualify was made more than five days in advance of any hearing before Judge Hanson and was therefore timely.[4]

### The one challenge per side limitation

Subdivision (3) of section 170.6 contains this proviso: "Under no circumstances shall a party or attorney be permitted to make more than one such motion in any one action or special proceeding pursuant to this section; and in actions or special proceedings where there may be more than one plaintiff or similar party or more than one defendant or similar party appearing in the action or special proceeding, only one motion for each side may be made in any one action or special proceeding."

The State Bar of California, advocating the adoption of section 170.6, emphasized the importance of this limitation as preventing excessive disturbance of court calendars.[5] There can be no doubt that the Legislature relied upon the efficacy of such a limitation in striking the balance between the needs of the litigants and the operating efficiency of the courts.[6]

---

[4]We note in passing several appellate court decisions which touch upon the subject of master calendar assignments, but do not decide the issue here presented.

In *Sambrano* v. *Superior Court* (1973) 31 Cal.App.3d 416, 419 [107 Cal.Rptr. 274], the case had been assigned to a trial department "by a clerical rotation." There was no master calendar and hence the 10-day-5-day limitation for motions to disqualify applied. The court did not have before it an assignment by a judge sitting in a master calendar department operated without a master calendar.

In *People* v. *Gibbs* (1970) 12 Cal.App.3d 526 [90 Cal.Rptr. 866], *People* v. *Hill* (1968) 268 Cal.App.2d 504 [74 Cal.Rptr. 180], *People* v. *Kennedy* (1967) 256 Cal.App.2d 755 [64 Cal.Rptr. 345], *People* v. *Genser* (1967) 250 Cal.App.2d 351, 362-363 [58 Cal.Rptr. 290], *People* v. *Hernandez* (1966) 242 Cal.App.2d 351 [51 Cal.Rptr. 385], and *Michaels* v. *Superior Court* (1960) 184 Cal.App.2d 820, 823 [7 Cal.Rptr. 858], the assignments all appear to have been made from true master calendars, in that ready cases were assigned out to ready departments. Therefore the motions to disqualify were held to be untimely because not made in the master calendar department.

[5]See Report of Senate Interim Judiciary Committee, page 103, Vol. 1, Appendix to Journal of the California Senate, Regular Session 1957.

[6]"The possibility that the section may be abused by parties seeking to delay trial or to obtain a favorable judge was a matter to be balanced by the Legislature against the desirability of the objective of the statute. Moreover, section 170.6 contains safeguards designed to minimize such abuses. It permits only one challenge to each side, requires that the party or his attorney show good faith by declaring under oath that the judge is prejudiced, and provides for timely making of the challenge before trial, for strictly limited granting of continuances, and for reassignment as promptly as possible." *Johnson* v. *Superior Court, supra,* 50 Cal.2d at page 697.

In *Pappa* v. *Superior Court* (1960) 54 Cal.2d 350 [5 Cal.Rptr. 703, 353 P.2d 311], the Supreme Court recognized that where "substantially adverse interests" existed between codefendants in a criminal case, each might be treated as a separate "side" for the purpose of making a motion under section 170.6, but the court concluded that the showing made in that case did not entitle the petitioning defendant to a separate motion after her co-defendant had disqualified one judge. Of significance here is the Supreme Court's observation: "It does not follow from the fact that Mrs. Pappa and Finch are represented by separate counsel that their interests are adverse." (54 Cal.2d at p. 355.)

In the case at bench the question whether there was in fact such an adverse interest between the defendants as to entitle them to separate motions to disqualify was never reached in the superior court because the court denied appellant's motion on another ground. For the purpose of this appeal we assume such a conflict existed with respect to the trial. Notwithstanding that, we are able to determine, as a matter of law, that no conflict was shown or even asserted with respect to the hearing of the motion to suppress evidence allegedly obtained through an illegal search and seizure. Regardless of who owned or possessed the drugs, each defendant had standing to move for suppression upon identical grounds. (*Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150, 155 [98 Cal.Rptr. 649, 491 P.2d 1].)

■ The only matter heard by Judge Hanson was the motion to suppress. There being no conflict of interest as to that hearing, the motion was ineffective to disqualify him from hearing and deciding that matter. Whether he would have been qualified to hear any other matter need not to be considered now.

We therefore proceed to a consideration of the merits of the court's ruling on the motion to suppress.

### The merits of the motion to supress

During the night of May 9, 1970, a group of police officers, engaged in a narcotics investigation, went to a house which was the residence of Carmen Chavira. After the officers had been admitted by Mrs. Chavira, they searched and found the contraband which became the basis of this prosecution. Both defendants moved to suppress the contraband upon the ground that it had been obtained by an illegal search. ■ The evidence received at the hearing on the motion was in conflict, but the record contains substantial evidence in support of the trial court's finding that Mrs. Chavira

had freely and voluntarily invited the officers into the house and consented to the search.[7]

Appellant asks this court to hold that, as a matter of law, Mrs. Chavira's consent was coerced. Mrs. Chavira's testimony concerning the officer's statements includes this: "Well, he said that he had enough evidence on me—I had my rights not to let him search without a warrant, but that he would go get one and leave somebody there to take care of the house."

The officer's testimony concedes that he "may have" told her other officers would remain in the house while he went for a search warrant.

The critical question before the trial court was whether Mrs. Chavira's will had been overborne—a factual issue to be decided upon the totality of the surrounding circumstances. (See *Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 226 [36 L.Ed.2d 854, 862, 93 S.Ct. 2041].) The trial court resolved this against appellant, and the finding is conclusive here. (See *People* v. *Ward* (1972) 27 Cal.App.3d 218, 224-225 [103 Cal. Rptr. 671].)

*Shuey* v. *Superior Court* (1973) 30 Cal.App.3d 535 [106 Cal.Rptr. 452], relied upon by appellant, is not in point. In *Shuey,* the appellate court ordered a motion to suppress reheard so that the trial court could consider the effect of what the appellate court considered to be an oppressive seizure of the defendant's home while a search warrant was being obtained. In the case at bench the effect of the officers' conduct was fully explored by counsel and weighed by the trial court.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied November 15, 1973, and appellant's petition for a hearing by the Supreme Court was denied February 14, 1974. Mosk, J., was of the opinion that the petition should be granted.

---

[7]The testimony of the police lieutenant leading the group of investigating officers was that he knocked on the door, identified himself and his partners as police officers conducting a narcotics investigation, and stated that he would like to talk to her. She opened the door and said "Come in." He again informed her of their purpose and advised her of her *Miranda* rights, after which she indicated that she would talk to the lieutenant. According to the lieutenant, he then "told her that we had reason to believe that drugs were being kept and sold from the residence.

"I asked her if we could make a search of the premises.

"She said, 'Yes.'

"I then told her that I wanted her to understand that she could refuse to let us search the premises and demand a search warrant, and I thought that we had enough information to go and obtain a search warrant and talk to the Judge about it.

"And she said, no, it wasn't necessary. She said, 'In fact, there is an upstairs. You can search the whole upstairs. You can search the whole house.'

"She was very cooperative. And we did that. We searched the house."