121 Cal.App.3d 36 (1981)
175 Cal. Rptr. 252
In re ROBERT P., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
ROBERT TERRY P., Defendant and Appellant.
Docket No. 37987.
Court of Appeals of California, Second District, Division One.
June 29, 1981.
*38 COUNSEL
Michael J. Udovic, under appointment by the Court of Appeal, for Defendant and Appellant.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
LILLIE, J.
The minor appeals from order sustaining petition on three counts  petty theft, receiving stolen property and tampering with an automobile  and order of disposition.
(1) A prima facie showing of the corpus delicti of the crime charged must be established before a defendant's extrajudicial statements, admissions or confessions may be received in evidence. (People v. Cantrell (1973) 8 Cal.3d 672, 679 [105 Cal. Rptr. 792, 504 P.2d 1256].) Appellant contends there is no evidence independent of his statements to show that he committed the crimes. He is in error for the establishment of the corpus delicti does not require proof that defendant committed the crime charged. (People v. Starr (1970) 11 Cal. App.3d 574, 581 [89 *39 Cal. Rptr. 906].) (2) "`All that need be shown by independent evidence before a confession may be introduced is that a crime has been committed by someone.' [Citations.]" (People v. Ott (1978) 84 Cal. App.3d 118, 131 [148 Cal. Rptr. 479]; original italics.) (3) The corpus delicti may be established by circumstantial evidence and by reasonable inferences to be drawn therefrom. (People v. Miller (1969) 71 Cal.2d 459, 477 [78 Cal. Rptr. 449, 455 P.2d 377].)
(4) Here ample independent evidence establishes that the crimes charged were committed. An automobile belonging to Nancy Church had been tampered with; the tires, radio and speakers of the vehicle were removed without the owner's consent and they were found in the possession of someone other than the owner.
On the night of December 18 a 1979 Pontiac Firebird with personal license plate "NCHURCH" and containing a Motorola 8-track AM/FM stereo belonging to Nancy Church was stolen.
At 1 p.m. on December 19 Officer Roupoli on patrol in a marked vehicle observed two juveniles, one of whom was appellant, standing at the gate of a residence. The other juvenile was holding up two tires which he began to roll toward the gate which appellant held open; at that time appellant looked in the direction of the officers then slammed the gate closed and ran to the rear of the yard. One officer detained the juvenile with the tires while Officer Roupoli ran through the gate; he observed defendant in the rear utility room of the residence looking out of the open door; when appellant saw the officer he disappeared into a smaller room from which Officer Roupoli ordered him to exit, and as he stepped out he dropped some gloves; appellant was detained for investigation. Officer Roupoli with the owner of the residence went to the utility room in which he had seen appellant and observed on an open shelf a small Motorola car stereo with two components; he then walked outside and searched the immediate area finding a 1979 Pontiac Firebird with personal license "NCHURCH" 75 yards from the gate. All four tires and the Motorola radio with speakers were missing from the Firebird; the tires and Motorola radio seized by the officers were identified by Church as belonging to her 1979 Firebird; she had given no one permission to take her car, tires or stereo.
Officer Jennings had a conversation with appellant who after being given his rights said he understood and waived them. Appellant told him "Alan came driving down the alley in a new Firebird. He told me *40 he just stole it and the keys were in it. I watched Alan strip it and he asked me to take the tires down the street and he would give me some money. Me and Lizard was pushing the tires when the police caught us." He then stated: "The car the officers found in the alley was the one we took the tires off."
Ample independent evidence established the corpus delicti of each offense; it also demonstrated that appellant was not a stranger to the activity relating to the car, tires or radio. The extrajudicial statements of appellant were properly admitted. The evidence reviewed above is sufficient to enable a reasonable trier of fact to conclude beyond a reasonable doubt that appellant committed the offenses alleged in the petition. (In re C.D.H. (1970) 7 Cal. App.3d 230, 233 [86 Cal. Rptr. 565].)
(5) Finally, appellant cites as error the trial judge's refusal to accept the affidavit filed pursuant to section 170.6, Code of Civil Procedure, as not timely filed. To place the issue in its proper perspective, we recount certain portions of the record that establish that the motion to disqualify was timely until the adjudication hearing actually commenced, and that the ten-day-five-day exception did not apply because the assigned judge who heard the adjudication matter was not known until four days before the hearing commenced.
Mr. Webber, deputy public defender, represented the minor; on December 24, 1979, the adjudication hearing was set for January 1, 1980, in department 265. On December 28 a Dennis H. hearing was held in department 264 and the cause continued for adjudication to January 11, 1980, in department 265. Judge Lachs was assigned to department 265 late in the week of January 1, but he did not preside in department 265 until the next week starting Monday, January 7, 1980, and continuing through Friday, July 11. In the morning of January 11 in department 265 Webber appeared and answered "ready" but it is apparent from the record that when the case was called for adjudication hearing in fact he could not try it then because he was representing another minor in another hearing in the courtroom next door (dept. 264), and the minor's case went to the second, third and fourth calls of the calendar; finally at 12:15 p.m. Webber returned to department 265. He told Judge Lachs there was about a 90 percent certainty that they could proceed with the minor's hearing that day but indicated he still had as many as four witnesses to call in the other case. Judge Lachs was reluctant to keep the witnesses waiting in the courtroom on *41 the chance that he might be able to return and suggested a continuance to January 21 to which Webber objected.
At 1:30 p.m. Webber, not able to try the case because he was still in trial in another department, filed an affidavit pursuant to section 170.6, Code of Civil Procedure, to disqualify Judge Lachs. Judge Lachs found the affidavit to be "not filed in a timely fashion." At 4:10 p.m. the adjudication hearing commenced with the calling of two witnesses; it was continued for hearing to January 22.
A great deal of sparring took place between Webber and Judge Lachs relative to Webber's inability to try the case even though he answered "ready" for hearing. But the record establishes the following which demonstrates that the affidavit was timely filed. As early as December 24 Webber knew the adjudication hearing was set in department 265 for January 11. There appear to have been two departments (depts. 264, 265) in the Juvenile Justice Center in South Los Angeles. Webber had been in and out of departments 264 and 265 between December 24 and January 11 and ordinarily it could be reasonably assumed that during this period he would know as early as December 24 the identity of the judge who would preside in the minor's case in department 265 on January 11. However, the yearly reassignment of judges by the presiding judge on January 1, 1980, precludes such assumption here, particularly in light of Judge Lachs' revelation that 10 days before January 11 "he did not even know [he] was going to be here [dept. 265]"; "I was assigned to this court last week and have been sitting in this court for this week, and that has been known, at least, since the 7th, if not earlier. At least since the 7th when I first sat in this court, and that was five days ago."
Section 170.6, Code of Civil Procedure, provides in substance that any party or attorney to an action may make an oral or written motion to disqualify the assigned judge supported by an affidavit that the judge is prejudiced against such party or attorney so that the affiant cannot or believes he cannot have an impartial trial. The motion may be made without notice but there are strict limits on the time and number. (6) If the affidavit is timely and in proper form the judge must recuse himself without further proof and the case must be reassigned to another judge. (Solberg v. Superior Court (1977) 19 Cal.3d 182, 187 [137 Cal. Rptr. 460, 561 P.2d 1148]; McCartney v. Commission on Judicial Qualifications (1974) 12 Cal.3d 512, 532 [116 Cal. Rptr. 260, 526 P.2d 268].) "The general rule established by section 170.6 is that *42 disqualification is permitted at any time prior to commencement of the trial or hearing. Two exceptions are provided  the 10-day-5-day provision and the master calendar provision. These special time limits are the Legislature's method for `accommodating the conflicting needs of the litigant and the court, where the party wishes to postpone his motion until he is fully informed, and the court requires time to make adjustments after a disqualification.' (People v. Escobedo, 35 Cal. App.3d 32, 37 [110 Cal. Rptr. 550]; Villarruel v. Superior Court, 35 Cal. App.3d 559, 561-562 [110 Cal. Rptr. 861].)" (Los Angeles County Dept. of Pub. Social Services v. Superior Court (1977) 69 Cal. App.3d 407, 412 [138 Cal. Rptr. 43], italics added.) Those two exceptions are embodied in subdivision (2) of section 170.6,[1] which sets up the time in which the motion to disqualify must be made. Neither exception is pertinent here. The record of the proceeding herein makes the master calendar exception factually inapplicable. (See In re Jose S (1978) 78 Cal. App.3d 619, 626 [144 Cal. Rptr. 309]); and the ten-day-five-day provision cannot apply to disqualification of Judge Lachs inasmuch as it was not until four days before the hearing date that it could be assumed that Webber first knew that Judge Lachs would be hearing the adjudication matter of the minor. Had the circumstances been such that it could be reasonably assumed that Webber knew ten days before the hearing that Judge Lachs would be sitting in department 265, he would have had to file such motion to disqualify at least five days in advance; he could not have waited until the afternoon of the hearing date. Thus, inasmuch as neither exception is applicable, disqualification was permitted at any time prior to the commencement of the hearing. (§ 170.6, Code Civ. Proc.)
It is urged by the Attorney General that Webber having been caught in a calendar conflict sought to use the affidavit under section 170.6 as an escape valve, and this court should not permit the objective of the section to be violated.
*43 It well may be that this was the reason Webber filed the affidavit but even that is not clear. The circumstances are as subject to the inference that, after all the wrangling between him and the judge concerning when he could proceed with the minor's case, he believed the judge would be prejudiced against him, as to the inference that he invoked the provisions of the statute for a tactical advantage. Even assuming that Webber misused the statute, our Supreme Court has made it clear, in the context of holding section 170.6 constitutional (which issue is not here involved), that although it does not condone such practices or underestimate their effect on the operation of trial courts, the possibility that the section may be abused by parties seeking tactical advantages or to delay trial or to obtain a favorable judge is a matter to be balanced by the Legislature against the desirability of the objective of the statute. The court enumerated several statutory safeguards designed to minimize such abuses, i.e., limitation of one motion to a party or his attorney, good faith by declaration under oath of the judge's prejudice, timely making of the challenge before trial, strict limitation in granting continuances and prompt reassignment for trial. (Solberg v. Superior Court (1977) 19 Cal.3d 182, 186-197 [137 Cal. Rptr. 460, 561 P.2d 1148], quoting from Johnson v. Superior Court (1958) 50 Cal.2d 693, 697 [329 P.2d 5].) Implicit in the necessity for making the motion under oath is the good faith belief in the judge's prejudice on the part of the party or counsel; and for the purposes of section 170.6 good faith is sufficiently established by the act of verification itself. (Solberg v. Superior Court, supra, 19 Cal.3d 182, 200.)
We are compelled to conclude that the affidavit was timely filed and in proper form. Immediate disqualification was mandatory (see Solberg v. Superior Court, supra, 19 Cal.3d 182, 187), and the legal effect of Judge Lachs' improper refusal to recuse himself resulted in loss of jurisdiction. Thus the orders are void and the error requires reversal. (In re Jose S. (1978) 78 Cal. App.3d 619, 628 [144 Cal. Rptr. 309].)
The orders are reversed.
Spencer, P.J., and Hanson (Thaxton), J., concurred.
NOTES
[1] In pertinent part, section 170.6, subdivision (2), Code of Civil Procedure provides: ".... Where the judge ... assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion shall be made at least five days before that date. If directed to the trial of a cause where there is a master calendar, the motion shall be made to the judge supervising the master calendar not later than the time the cause is assigned for trial. In no event shall any judge ... entertain such motion if it be made ... after the making of an opening statement by counsel for plaintiff, or ... after swearing in the first witness or the giving of any evidence or after trial of the cause has otherwise commenced. If the motion is directed to a hearing (other than the trial of a cause), the motion must be made not later than the commencement of the hearing. In the case of trials or hearings not herein specifically provided for, the procedure herein specified shall be followed as nearly as may be."